[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1353 
This case is a review of the conviction of the petitioner, Percy Leo Dobard, for violation of § 13A-5-31 (a)(5), Code 1975, murder of a police officer on duty. After a separate sentencing hearing, Dobard was sentenced to death by electrocution. The Court of Criminal Appeals affirmed the conviction and sentence on 29 June 1982. This court issued the writ of certiorari and now affirms the decision of the Court of Criminal Appeals.
After a careful review of the record, this court adopts the findings of fact as set forth by the late Judge Barron:
 "Some time between 5:00 a.m. and 6:00 a.m. on Saturday, June 21, 1980, O'Jim's Restaurant in Eutaw, Alabama was robbed by appellant and a female companion, Jeanette Kennedy. After Kennedy left the restaurant, appellant pulled a pistol on waitress Corethea Hitton and demanded `give me all your money.' Ms. Hitton complied with the demand. Appellant and Kennedy speedily fled, and Ms. Hitton called the Eutaw Police.
 "About 35 miles from the scene of the robbery, appellant, who was driving the getaway vehicle, was spotted by Livingston University Police Officer Wayne Sudduth, who was assisting in the search for the suspects. Officer Sudduth was aware that the robbery had occurred and apparently had knowledge of the description of the getaway vehicle from a police radio broadcast.
 "Officer Sudduth informed Livingston Police Officer Raymond Burne that he was stopping the vehicle. Officer Sudduth, who was dressed in a blue uniform, was driving a marked police car.
 "With his flashing lights on, Officer Sudduth stopped the vehicle which contained appellant and Kennedy. He approached the driver's side of the car and asked for appellant's driver's license. Appellant opened the car door and reached around as if to get his billfold. However, according to the testimony of witness Kennedy, rather than removing his billfold he grabbed a .38 caliber revolver and shot Officer Sudduth, killing him. The evidence indicated that officer Sudduth did not have his service revolver drawn, as it was found in his holster with the safety strap in place.
 "After the shooting of officer Sudduth, appellant and Kennedy sped away, only to wreck their vehicle on the western edge of Livingston. Both exited the car and walked up the road where they hid in some bushes until a truck driven by Mr. Johnny Mathews approached. Mathews saw appellant come from under a bridge and act as if he were injured. Mathews stated that appellant was yelling for help and he stopped his truck on the side of the road. When appellant came within close proximity of the truck, he pulled the revolver, pointed it at Mathews's face and demanded the keys to the truck. After a brief period of time, during which Sumter County Deputy Sheriff Ralph Rainey drove past appellant, Kennedy, and Mathews, appellant secured the keys and fled with Kennedy.
 "Deputy Rainey reported what he had seen to the Livingston Police Department and was informed that he had observed the restaurant robbery suspects. Deputy Rainey set a roadblock and while moving his patrol car to allow a vehicle to pass, appellant drove Mathew's truck past him. A high speed chase ensued involving several vehicles.
 "Another roadblock had been set by York City police officers about halfway between Livingston and York. As the truck approached, the officers at the roadblock began to fire at it. Immediately thereafter, the truck wrecked and *Page 1354 
overturned. Subsequently, Deputy Rainey saw appellant throw a gun out of the truck cab. Deputy Rainey immediately retrieved it. Appellant and Kennedy were taken into custody, transported to a local hospital for examination, and afterwards taken to Sumter County Jail."
The petitioner raises six issues on this review.
 I.
The first issue posed by the petitioner is whether the media coverage surrounding the attempted assassination of President Reagan improperly influenced the jury and thereby denied petitioner the right to a fair trial as guaranteed by the Fifth and Sixth Amendments to the Constitution of the United States.
During the last two days of sequestration, all the members of the jury were allowed to, and did view on television, news accounts of the assassination attempt on President Reagan. The petitioner contends this exposure unlawfully influenced the jury by encouraging them to convict the petitioner. While it is not delineated in the record precisely which news accounts the jury actually viewed, the petitioner claims the news accounts were riddled with editorialization. The subliminal message allegedly transmitted to viewers was that something was wrong with America and Americans must take action. The available course of action for the jury, argues the petitioner, was to convict the petitioner of a capital crime. In support of this argument the petitioner relies principally upon the doctrine ofSeekers v. State, 35 Ala. App. 40, 44 So.2d 628, cert. denied,253 Ala. 420, 44 So.2d 633 (1949).
In Seekers the jury was taken to a movie which bore striking similarities to the case being tried. The crime charged, and that portrayed in the movie, were both of a violent nature. The location of the victim's wounds in both instances was the same. Earlier that day, the jury had heard medical testimony concerning the wounds. Lastly, the film presented detailed accounts of the trial and convictions of the villains. Considering the similarities between the film and the trial, the court noted: "We would be compelled to enter into the realm of speculation, conjecture and surmise to hold that by witnessing the performance the jury was not unduly influenced against the interests of the accused." Seekers, supra.
Seekers and the case at bar, however, are distinguishable. Other than the violent nature of the crimes involved, the assassination attempt and petitioner's case bear few if any similarities. This court does not find that the news accounts complained of influenced the jury in the present case. Similarly, this court does not find that television coverage of the event influenced the jury through editorialization to the extent shown by Styles v. State, 129 Ga. 425, 59 S.E. 249
(1907), as petitioner contends.
In Styles, the jury, while sitting for a murder case, was permitted to read an editorial criticizing jurors for their reluctance to convict murderers. The obvious impact and influence such an editorial could promulgate is not present here. Whatever "editorial message" the jurors in this case could have gleaned from the news accounts of the attempts on President Reagan's life was certainly unrelated and detached from their deliberations about this case. To hold otherwise would be to delve into boundless speculation.
"The test of vitiating influence is not that it did influence a member of the jury to act without evidence, but that it might have unlawfully influenced that juror and others with whom he deliberated, and might have unlawfully influenced its verdict rendered." Roan v. State, 225 Ala. 428, 435, 143 So. 454, 460
(1932). We hold the exposure to television coverage of the assassination attempt on President Reagan did not influence the jurors to the extent that they would have acted without evidence. Accordingly, the trial judge properly denied petitioner's motion for a new trial based on these grounds. *Page 1355 
 II.
The second contention raised is that the State used its peremptory strikes in an unconstitutional manner by systematically excluding "young blacks" from the jury. Petitioner is black and his victim, Officer Sudduth, was white. The jury was composed of seven blacks and five whites. This issue falls squarely under the tutelage of Swain v. Alabama,380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759, reh. den.,381 U.S. 921, 85 S.Ct. 1528, 14 L.Ed.2d 442 (1965).
In order to make a constitutional claim under the doctrine ofSwain, petitioner must allege a systematic use of peremptory challenges against blacks over a period of time. Swain,380 U.S. at 227, 85 S.Ct. at 839. Otherwise, the presumption that the prosecutor is utilizing the State's strikes in a fair and impartial manner must stand. Id., at 222, 85 S.Ct. at 837. Petitioner has failed to meet the burden of proof announced inSwain. Consequently, his claim must fail. Accord Apodaca v.Oregon, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972).
Additionally, we recognize, as did the Court of Criminal Appeals, that Allen v. State, 414 So.2d 163 (Ala.Cr.App. 1982), most recently resolved this issue adversely to the petitioner.See also Lopez v. State, 415 So.2d 1204, 1209 (Ala.Cr.App. 1982).
 III.
Petitioner's next contention is that he was denied an impartial jury as guaranteed by the. United States and Alabama Constitutions. The contention is based on two grounds: (1) Two veniremen were excused for cause due to their opposition to capital punishment, in contradiction of the holding of UnitedStates v. Witherspoon, 391 U.S. 510, 88 S.Ct. 1770,20 L.Ed.2d 776 (1968); (2) The prosecutor improperly secured a "promise" from the jury during voir dire that they would sentence the defendant to death if guilt was shown. We reject this contention whether based on either ground.
In Witherspoon the Supreme Court held: "[A] sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction." Id., at 522, 88 S.Ct. at 1777. This position was reaffirmed in Davis v. Georgia, 429 U.S. 122, 97 S.Ct. 399,50 L.Ed.2d 339 (1972). Consequently, no venireman may be removed for cause unless it is determined that his views as to capital punishment are so strong that he "would automatically refuse to impose a death sentence regardless of the evidence produced."Liddell v. State, 287 Ala. 299, 251 So.2d 601, 610 (1971).
The petitioner challenges the removal of veniremen Daisy Cannon and Sim McCasson. Regarding prospective juror Cannon the record reflects the following:
 "MR. WATKINS [Prosecutor]: Yes, sir. Ladies and Gentlemen, the Judge has already qualified you on capital punishment, but I would like to go into it a little bit further to make sure that we understand each other.
 "This case that we are going to try is one of the cases enumerated in the statute that says that a person may receive death if you find him guilty of a certain offense; and, I want to know if we all understand each other, that each of you are telling me individually, that if you believe beyond a reasonable doubt and to a moral certainty the necessary elements to return a verdict, which would mean that this person would be put to death by electrocution, that you would be able to do that? Is that what everybody is telling me? Is there anybody that would not be able to do that?
"PJ: I don't believe I would.
 "THE COURT: All right; would you please stand up and give your name, please ma'am?
 "PJ CANNON: Daisy Cannon. And, I just don't believe I could send anyone to the electric chair.
 "Mr. WATKINS: [Prosecutor]: Mrs. Cannon, are you telling the Court that no matter what the evidence is; that if you *Page 1356 
believe beyond a reasonable doubt and to a moral certainty that this person did it; that if we follow the statute to show that we can prove all the necessary elements, that you would not be able to vote guilty if it meant that he would be sent to death?
"PJ CANNON: I don't think I would."
Prospective juror McCasson's comments may also be found in the record:
 "THE COURT: In this case, the State of Alabama, if the defendant is found guilty of the charge in the indictment, has indicated they plan to ask for the death penalty if the defendant is found guilty beyond a reasonable doubt as charged. Now, is there anyone on the jury panel that has a fixed opinion against capital punishment? In other words, does anyone have a strong feeling, a fixed opinion, against capital punishment? If so, I would like to see a show of hands.
 "Yes sir. Mr. McCasson. You have an opinion against capital punishment?
"PJ McCasson: Yes, sir.
 "THE COURT: And, you do not feel that you would be able to return a verdict sentencing someone to the electric chair if they were found guilty beyond a reasonable doubt and to a moral certainty of the crime of the charges; is that correct?
 "PJ McCASSON: My opinion about it, I think it should be some other way without taking a life for a life.
 "THE COURT: All right; I understand and I respect that, sir. I am just trying to ascertain each one of your opinions. So, it is your view that you have a fixed opinion against capital punishment?
"PJ McCasson: Yes, sir.
 "THE COURT: No matter what the evidence would be in a case you would not be able to vote for capital punishment?
"PJ McCASSON: Yes, sir."
The court finds it difficult to envision how either prospective juror could have been more explicit in expressing an unqualified opposition to the death penalty. Accordingly, under Witherspoon and Liddell, prospective jurors Cannon and McCasson were properly removed for cause.
The second facet of voir dire with which petitioner takes issue, the prosecutor's questioning, may also be found in the record.
 "MR. WATKINS: . . . It is my understanding from you that we all understand that the State has the burden of proving to you beyond a reasonable doubt and to a moral certainty, that this man is guilty as charged. I'm asking you to go one step further in assuming that the State of Alabama proves to you beyond a reasonable doubt and to a moral certainty that this man is guilty of the capital offense as charged, will all of you promise to me that you will be about [sic] to return a verdict that will place him in the electric chair and cause his death? Everybody, search your conscience now and answer it honestly because that's all we want to know is what you are thinking and how you feel. Would each of you tell me that if I prove to you, the State proves to you, beyond a reasonable doubt and to a moral certainty that this man is guilty as charged of a capital offense, that you will be able to vote for the death penalty?
". . .
 "MR. WATKINS: I take it by your silence that you all will.
"Thank you. That's all."
Petitioner argues that this line of questioning amounted to a promise, between the prosecutor and the jury, to return a sentence of death if the defendant was shown to be guilty. We cannot agree.
Concededly, this question does contain the word "promise." However, this word must be considered in its full context. Most importantly, the phrase "will be able" indicates that the prosecutor is not looking for a commitment from the jurors, but rather simply seeking to ascertain whether the jury has the capacity to fulfill its duty. In our view, this line of questioning is proper. *Page 1357 
 IV.
Petitioner's fourth contention is that the imposition of the death sentence in this case constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution. We cannot agree.
The petitioner concedes that the death sentence is not per se unconstitutional, but nevertheless argues that a sentence of death in the instant case is inconsistent with the holding ofEnmund v. Florida, ___ U.S. ___, 102 S.Ct. 3368,73 L.Ed.2d 1140 (1982).
In Enmund the Supreme Court held that the Eighth Amendment prohibited the imposition of the death sentence upon a defendant who aided and abetted in the commission of a robbery, in the course of which a murder was committed, but where no evidence was offered to show that the defendant actually killed or intended to kill anyone. Id., at 3377.
In an attempt to square the facts in the case at bar with those presented in Enmund, petitioner argues a collage of facts not mentioned by the Court of Criminal Appeals. We note that in doing so, petitioner has failed to comply with the provision of ARAP 39 (k) which provides in pertinent part:
 "If the petitioner is not satisfied with that [Court of Criminal Appeals'] statement of facts, he may, on application for rehearing in that court, present any additional or corrected statement of facts and request that court to add or correct those facts in its opinion on rehearing. If the court fails to accede to this request, petitioner may copy the statement in the petition to this court, with references therein to the pertinent portions of the clerk's record and reporter's transcript, and it will be considered along with the statement of facts in the opinion of the appellate court, if found to be correct."
Furthermore, after careful review of the entire record, we find no plain error or defect in the proceedings below. Therefore, we limit our considerations to the facts set out by the Court of Criminal Appeals. ARAP, 39 (k).
Overwhelming evidence of record shows that Dobard pulled the trigger, firing the shots that killed Officer Sudduth. Consequently, we find no merit to petitioner's contention thatEnmund v. Florida, ___ U.S. ___, 102 S.Ct. 3368,73 L.Ed.2d 1140 (1982), precludes imposition of the death penalty in this case.
We also reject petitioner's argument regarding disproportionate sentencing, as the petitioner clearly bears more culpability than his accomplice, Kennedy. Lockett v. Ohio,438 U.S. 586, 605, 98 S.Ct. 2954, 2965, 57 L.Ed.2d 973 (1978);Beck v. State, 396 So.2d 645, 664 (1981).
Petitioner argues further that the trial court's findings of aggravating circumstances were erroneous, as one circumstance was already charged in the indictment. Under the doctrine ofKeller v. State, 380 So.2d 926, 937 (Ala.Cr.App.), cert.denied, 380 So.2d 938 (Ala. 1980), argues petitioner, one circumstance may not serve the dual purpose of both charge and aggravating circumstance.
The trial court noted two aggravating circumstances: (1) The capital felony was committed for the purpose of avoiding or preventing a lawful arrest; and, (2) The capital felony was committed while the defendant was engaged in flight after committing a robbery.
We noted in Beck v. State, 396 So.2d at 663:
 "In Alabama, the aggravating circumstances constitute an element of the capital offense and are required to be `averred in the indictment' (Code 1975, § 13-11-2), and must be proved beyond a reasonable doubt. Consequently, the jury verdict that the defendant was guilty of committing the capital offense would mean that the State had already established at least one aggravating circumstance, even though the legislature did not include an aggravating circumstance in § 13-11-6 to correspond with the `aggravation' made a part of each capital *Page 1358 
offense by § 13-11-2 (a). In addition, the State would be permitted to offer evidence of any other aggravating circumstance contained in § 13-11-6, which was not `averred in the indictment' but which was proved beyond a reasonable doubt at trial or by the evidence taken at the sentencing hearing. . . ."
The doctrine of Keller. v. State, 380 So.2d 926, is not applicable, as alleged, in the instant case. Therefore, we reject petitioner's argument in this regard.
Additionally, petitioner asserts that the State fell short of showing that the murder was committed while the defendant was engaged in flight after committing a robbery. We do not agree.
The State must prove aggravating circumstances "beyond a reasonable doubt." Beck v. State, 396 So.2d at 663. We find that the State proffered sufficient evidence to meet this burden. Testimony indicated that the petitioner robbed O'Jim's restaurant and then drove at high speeds for some thirty miles. Officer Sudduth's lights were flashing when he detained petitioner. Officer Sudduth was shot shortly after approaching the window of Dobard's vehicle.
Petitioner insists that the trial judge and jury failed to consider nonstatutory mitigating circumstances in rendering a sentence of death. In support of this contention petitioner offers the sentencing order of the trial court, which fails to mention any nonstatutory mitigating circumstances. The judge and jury should consider both statutory and nonstatutory mitigating circumstances. Beck v. State, 396 So.2d at 663. This should include all relevant evidence that indicates "not only why a death sentence should be imposed, but also why it should not be imposed." Id., at 662. A review of the sentence hearing reveals the following instruction of the court to the jury:
 "So those are the mitigating circumstances that the law of Alabama provides. In addition to mitigating circumstances that I just read to you, you may also consider as a mitigating circumstance any aspect of the defendant's character, his life, and any of the circumstances of the capital offense which tend to indicate that the defendant should not be sentenced to death. Mitigating circumstance does not have to be included on the list that I have read to you in order for you to consider it. Mitigating circumstances considered by you should be based on the evidence that you have heard. And if you are satisfied from the evidence presented during the guilt stage of the trial or during the sentencing hearing, that a mitigating circumstance exists in this case then you should consider it. Mitigating circumstance need not be proven to you — need merely be proven to your satisfaction. It does not have to be proven beyond a reasonable doubt for you to consider it. Only an aggravating circumstance has to be proven beyond a reasonable doubt and that burden is on the State."
The fact that nonstatutory mitigating circumstances were not listed in the sentencing report is by no means conclusive that they were not considered. In light of the instructions given to the jury, it is clear that they were in fact considered.
We conclude: (1) The murder of a policeman on duty under the existing aggravating circumstances balanced against the mitigating circumstances is properly punishable by a sentence of death; (2) Similar crimes throughout the state are being punished capitally, see Magwood v. State, 426 So.2d 929
(Ala.Cr.App. 1982); Owen v. State, 418 So.2d 214 (Ala.Cr.App. 1982); Watkins v. State, 409 So.2d 901 (Ala.Cr.App. 1981); and, (3) The sentence of death is appropriate when considered with the role and sentence of his accomplice Jeanette Kennedy. Accordingly, imposition of the death penalty was not error.Gregg v. Georgia, 428 U.S. 153, 193, 96 S.Ct. 2909, 2934,49 L.Ed.2d 859 (1976); Beck v. State, 396 So.2d at 664.
 V.
The fifth issue raised is whether the indictment sufficiently charges the petitioner *Page 1359 
with a capital felony. The petitioner contends that the indictment is deficient as it fails to aver any aggravating circumstances enumerated in § 13A-5-35, Code 1975.
This issue may be resolved by turning to the guidance ofKyzer v. State, 399 So.2d 330 (Ala. 1982). Kyzer made it clear that the gravamen of a capital offense is an "intentional killing." Id., at 335. In order for the death sentence to be imposed, however, an intentional killing with aggravation must be shown. Beck v. State, 396 So.2d 645 (Ala. 1980). Herein lies the distinction between the related concepts of aggravation and aggravating circumstances. The capital offenses set forth in § 13A-5-31 contain an "intentional killing," the gravamen, and aggravation. Both must be averred in the complaint. Id., at 663. The aggravating circumstances listed in § 13A-5-35 are those considered during the sentencing hearing mandated byBeck.
This conclusion parallels that in Kyzer, where this court proclaimed:
 "If a defendant is convicted of `murder in the first degree wherein two or more human beings are intentionally killed,' and if the jury, after a hearing conducted in accordance with the principles set out in Beck, fixes the penalty at death, the trial judge, if convinced that the `aggravation' averred in the indictment `that two or more human beings were intentionally killed by the defendant by one or a series of acts' outweighs the mitigating circumstances, may impose a sentence of death by setting forth in writing, as required by § 13-11-4, his findings, even though the `aggravating circumstance' is not `enumerated in § 13-11-6.' The jury could make the same finding at its sentence hearing mandated by Beck."
Kyzer, 399 So.2d at 338.
The indictment charging the petitioner reads as follows:
 "Percy Leo Dobard . . . did, unlawfully and with malice aforethought intentionally cause the death of another person, Carlton Wayne Sudduth, by shooting him with a pistol; while the said Carlton Wayne Sudduth was a police officer on duty as a Livingston University Security Police Officer under the provisions of Title 16-53-12, Code of Alabama, 1975 in violation of 13A-5-31 of the Code of Alabama against the peace and dignity of the State of Alabama."
We find that this indictment avers both the gravamen of a capital offense, and the required aggravation, "while said Carlton Wayne Sudduth was a police officer on duty."
The trial court properly denied petitioner's motion to dismiss and overruled his demurrer to the indictment.
 VI.
The final issue raised is whether the State's closing argument impermissibly commented upon the petitioner's failure to take the stand. The disputed comments read as follows:
 "There is no evidence before you that could give you any reason why you could think that Jeanette Kennedy shot Officer Sudduth as opposed to Mr. Dobard. The evidence is very clear. As far as I can see, and it is undisputed, that Percy Dobard shot and killed Officer Wayne Sudduth."
"[W]here there is the possibility that a prosecutor's comment could be understood by the jury as reference to failure of the defendant to testify, § 6 [Const. of Ala. of 1901] is violated." Beecher v. State, 294 Ala. 674, 682, 320 So.2d 727,734 (1975). Additionally, we noted in Beecher:
 "Where the State's evidence does stand uncontradicted, the prosecutor does have the right to point this out to the jury. In that circumstance the prosecutor could say: `There has been no refutation of any of the evidence presented by the State;' or more simply, `The State's evidence stands uncontradicted,' or other appropriate comment to like effect." Id.
We hold that the prosecutor's comments in question could not
have been understood as being a reference to the defendant's failure to testify, but rather fall squarely within the approved bounds of Beecher. Consequently, *Page 1360 
the petitioner's constitutional rights were not violated.
For the foregoing reasons the judgment of the Court of Criminal Appeals is due to be and is hereby affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, FAULKNER, JONES, ALMON, SHORES, BEATTY and ADAMS, JJ., concur.