The appellant, Lorenzo Norris Harris, appeals his convictions for murder, a violation of § 13A-6-2, Code of Alabama 1975, and attempted murder, a violation of § 13A-4-2 and § 13A-6-2. He was sentenced to 40 years and 20 years in the state penitentiary, respectively, and those sentences were to be served consecutively.
The state's evidence tended to show that on the evening of December 13, 1993, the appellant shot Billy Truitt and his 13-month old son, Jonus Truitt. Billy Truitt testified that he was shot in the chest and in the side. Dr. Alfredo Paredes, medical examiner for the Department of Forensic Sciences, testified that Jonus Truitt died as the result of a gunshot wound to the face.
At the time of the shooting, Billy Truitt and his wife, Mary Truitt, had been separated for approximately one month. Mary Truitt had filed for a divorce. They had one son, Jonus. Billy Truitt testified that around noon on December 13, 1993, he picked up Jonus at Mary's sister's house. He testified that he told Mary that he would bring Jonus home around 6:00 p.m. that evening. The appellant testified that Mary Truitt telephoned him that day and asked him to come over because she said she was depressed over the death of her aunt.
Billy testified that later that afternoon Mary telephoned and he told her that he would bring Jonus home within 30 minutes. When he arrived, he saw a white truck parked in front of Mary's trailer. Billy stated that after he entered Mary's trailer, he *Page 28 
asked Mary about the truck. Mary told him that the truck belonged to "a friend." Billy repeatedly questioned Mary about the "friend." After Mary told Billy three times to give her the baby, Mary called out the appellant's name. Billy testified that while he was holding Jonus in one arm, as a reflex action, with his free hand, he picked up a ball-peen hammer, that was lying on the counter and went to the rear of the trailer to the bedroom. When Billy entered the bedroom, the appellant fired three shots. The first shot hit Jonus in the chin and the next two shots hit Billy Truitt. Billy Truitt stated that he ran to his truck with Jonus in his arms and drove to the medical center. As he drove away, Billy saw the appellant come out of the trailer with a gun.
The appellant testified that he acted in self-defense. He testified that Billy Truitt was violent and extremely jealous and that Truitt had beaten Mary Truitt several times in the past. The appellant stated that he had been told that Billy Truitt had threatened his life. The appellant further stated that he learned that Billy Truitt owned a gun and that he had placed the gun against Mary Truitt's head on several occasions. He testified that after Billy entered the trailer he heard Mary crying and screaming. He heard a metal object hit the door before it opened. The appellant stated that he thought that the metal object was a gun. He testified that just before the door was "banged open" he heard Mary shout "Lorenzo." The appellant stated that he fired the three shots because he thought Billy Truitt was going to kill him.
 I
The appellant contends that the trial court erred by refusing to give the appellant's requested jury instruction on the lesser included offense of "heat-of-passion" manslaughter.
The offense of "heat-of-passion" manslaughter is defined in § 13A-6-3(a)(2), Code of Alabama 1975, as follows:
 "(a) A person commits the crime of manslaughter if:
". . . .
 "(2) He causes the death of another person under circumstances that would constitute murder under Section 13A-6-2; except, that he causes the death due to sudden heat of passion caused by provocation recognized by law, and before a reasonable time for the passion to cool and for reason to reassert itself."
The defendant must present evidence of legal provocation to require a charge on heat of passion.
 " ' "Manslaughter is the unlawful killing of a human being without malice; that is, the unpremeditated result of passion-heated blood — caused by a sudden, sufficient provocation. And such provocation can, in no case, be less than assault, either actually committed, or menaced under such pending circumstances as reasonable to convince the mind that the accused has cause for believing, and did believe, he would be presently assaulted, and that he struck, not in consequence of a previously formed design, general or special, but in consequence of the passion suddenly aroused by the blow given, or apparently about to be given. . . .' "
Easley v. State, 246 Ala. 359, 362, 20 So.2d 519, 522 (1944), quoting Reeves v. State, 186 Ala. 14, 16-17, 65 So. 160 (1914).
The mere appearance of an imminent assault may be sufficient to constitute legal provocation to support heat-of-passion manslaughter. Cox v. State, 500 So.2d 1296, 1298 (Ala.Cr.App. 1986). "To constitute adequate legal provocation, it must be of a nature calculated to influence the passions of the ordinary reasonable man." Biggs v. State, 441 So.2d 989, 992
(Ala.Cr.App. 1983). Here, the appellant waited in Mary Truitt's darkened bedroom with his gun. There were no words spoken between the appellant and Billy Truitt, nor did the appellant clearly see Truitt. The appellant fired two shots, waited a few moments, and then fired again. The evidence does not support the appellant's claim that there was legal provocation for the killing. The appellant's blind, premature action thwarted any possible contention that there was legal provocation to support heat-of-passion manslaughter. The trial court did not err in denying the appellant's jury instruction. *Page 29 
 II
The appellant contends that the trial court erred by allowing the state to present evidence that the appellant had the opportunity to retreat or escape and thereby avoid the confrontation with Billy Truitt. The trial judge did instruct the jury on the duty to retreat. The court gave the following instruction:
 "The Court charges you, the jury, that a person who uses deadly physical force because he believes that another person is using or is about to use unlawful deadly physical force on himself had no duty to retreat when he's a guest in the home of another — I have already said that — and when he is not the original aggressor in the incident."
The appellant claims that the trial court erred by allowing the state to present evidence that tended to establish that the appellant could have escaped from the Mary Truitt's trailer without confronting Billy Truitt. Although there was testimony that tended to establish this, the trial court instructed the jury that the appellant had no duty to retreat. "A crucial assumption underlying the jury system is that juries will follow the instructions given them by the trial judge."Dobard v. State, 435 So.2d 1338, 1346 (Ala.Cr.App. 1982), aff'd, 435 So.2d 1351 (Ala. 1983), cert. denied, 464 U.S. 1063,104 S.Ct. 745, 79 L.Ed.2d 203 (1984). The trial court did not err by permitting the evidence relating to the appellant's opportunity to retreat.
 III
The appellant contends that the trial court erred by refusing to grant the appellant's motion for a change of venue based on pre-trial publicity. The appellant claims that the allegedly extensive and biased pretrial publicity made it impossible for him to receive a fair trial in Houston County.
The record reflects that there was some publicity regarding the events in this case. However, only 12 of the 35 potential jurors, who were questioned on voir dire examination, indicated that they had heard about the case. The trial court questioned the potential jurors as to whether they could set aside what they had heard about the case and base their decision on the evidence presented at trial. One juror was struck for cause after indicating that the juror's verdict would be affected by the pretrial publicity.
 "In order to grant a motion for change of venue, the defendant must prove that there existed actual prejudice against the defendant or that the community was saturated with prejudicial publicity. Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); Franklin v. State, 424 So.2d 1353 (Ala.Crim.App. 1982). Newspaper articles or widespread publicity, without more, are insufficient to grant a motion for change of venue. Anderson v. State, 362 So.2d 1296, 1298
(Ala.Crim.App. 1978). As the Supreme Court explained in Irvin v. Dowd, 366 U.S. 717, 723, 81 S.Ct. 1639, 1642-43, 6 L.Ed.2d 751 (1961):
 " 'To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court. . . .'
 "The standard of fairness does not require jurors to be totally ignorant of the facts and issues involved. Murphy v. Florida, 421 U.S. 794, 799-800, 95 S.Ct. 2031, 2035-2036, 44 L.Ed.2d 589
(1975). Thus, '[t]he proper manner for ascertaining whether adverse publicity may have biased the prospective jurors is through the voir dire examination.' Anderson v. State, 362 So.2d 1296, 1299 (Ala.Crim.App. 1978)."
Ex parte Grayson, 479 So.2d 76, 80 (Ala.), cert. denied,474 U.S. 865, 106 S.Ct. 189, 88 L.Ed.2d 157 (1985).
Here, the appellant has not satisfied the requirements ofGrayson. There was no evidence that the remaining prospective jurors, after one was removed for cause, could not try the case based solely on the evidence presented at trial. The trial court did not *Page 30 
err in denying the motion for a change of venue.
 IV
The appellant contends that the trial court erred in denying his motion for a judgment of acquittal. The appellant claims that there is insufficient evidence to support his convictions.
 "In determining whether there is sufficient evidence to support the verdict of the jury and the judgment of the trial court, we must accept as true the evidence introduced by the state, accord the state all legitimate inferences therefrom, and view the evidence in the light most favorable to the prosecution. McMillian v. State, 594 So.2d 1253
(Ala.Cr.App. 1991); Faircloth v. State, 471 So.2d 485 (Ala.Cr.App. 1984), aff'd, 471 So.2d 493 (Ala. 1985); Cumbo v. State, 368 So.2d 871 (Ala.Cr.App. 1978), cert. denied, 368 So.2d 877 (Ala. 1979). . . . 'Conflicting evidence presents a jury question not subject to review on appeal, provided the state's evidence establishes a prima facie case.' McMillian, 594 So.2d at 1263."
Underwood v. State, 646 So.2d 692, 695 (Ala.Cr.App. 1993). See also Linzy v. State, 455 So.2d 260 (Ala.Cr.App. 1984).
There was sufficient evidence to submit the case to the jury for its determination; therefore, the trial court did not err by denying the appellant's motion for a judgment of acquittal.
 V
The appellant next contends that the trial court erred by instructing the jury on the doctrine of transferred intent.
 "No party may assign as error the court's giving or failing to give a written instruction, or the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge, unless he objects thereto before the jury retires to consider its verdict, stating the matter to which he objects and the grounds of his objection."
Rule 21.2, Ala.R.Crim.P.
The appellant did not object to the instruction on transferred intent; therefore, he did not preserve this issue for review on appeal.
 VI
The appellant next challenges his indictment and claims that the trial court erred in denying his motion to quash the indictment. Specifically, the appellant contends that the indictment should have been quashed because of the allegedly discriminatory method of selecting the grand jury foreperson.
The record reflects that the appellant was indicted twice in this case. The first indictment was dismissed because of discrimination in the selection of grand jury forepersons in Houston County. The trial court noted that the appellant's previous indictment had been dismissed because of the grand jury selection method, when it stated:
 "In this case, that motion — when Mr. Harris was previously indicted, that motion was filed and was granted in about, let's see, June or July of this year, after which the grand jury foreman selection process was changed in Houston County or about the same time it was.
 "So we are back in the newly-indicted case on that same issue."
The appellant was indicted again on September 2, 1994, for murder and attempted murder. The circuit clerk, Judy Byrd, testified that the method of selecting grand jury forepersons had recently been modified in Houston County. Previously the judge selected someone from the grand jury panel whom he or the Clerk knew to be of good character. After January 1994, a new selection process, drawing a name, was initiated.
This court has stated that in order to establish a prima facie case of discrimination in the selection of the grand jury foreperson the appellant must demonstrate " '1) that the group against whom discrimination is asserted is a distinct class; 2) the degree of underrepresentation by comparing the proportion of the group in the total population to the proportion called to serve as foreman over a significant period of time; and 3) that the selection procedure is susceptible to abuse or is not racially neutral.' " Lee v. State, 631 So.2d 1059, 1060
(Ala.Cr.App. 1993), quoting Johnson v. Puckett, *Page 31 929 F.2d 1067 (5th Cir.), cert. denied, 502 U.S. 898,112 S.Ct. 274, 116 L.Ed.2d 226 (1991).
The appellant now challenges the new selection process because at the time of the new indictment the new procedure had yet to result in a black grand jury foreperson. Mrs. Byrd testified that under the new procedure all the grand jury member's names are placed in a hat and the judge selects one name. The person selected is asked if he or she would like to serve as the foreperson. The appellant has not established a prima facie case of discrimination because he has failed to satisfy the third prong of Lee. This selection method is race neutral; therefore, the trial court was correct in denying the appellant's motion to dismiss. There was no error here.
For the foregoing reasons, the judgment in this case is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.