On July 7, 1997, Lavern Marcelus McDowell was indicted for murder, Ala. Code 1975, § 13A-6-2, by the grand jury *Page 466 
of Mobile County. McDowell waived the reading of the indictment and pleaded not guilty. On December 8, 1997, the jury trial began, and on December 10, 1997, the jury found McDowell guilty as charged. On February 10, 1998, McDowell was sentenced to 40 years' imprisonment and was ordered to pay restitution, court costs, an amount to the victims compensation fund, and monies toward fees for his appointed attorney.
The evidence at trial established the following. On March 13, 1996, McDowell and the victim, David Simon, had several contacts with one another. All of the pertinent events occurred on and near Sunset Avenue in Mobile. On the first occasion, Simon asked to borrow McDowell's bicycle. McDowell refused, and Simon cursed McDowell. They saw each other again, but it was not until later that evening that violence erupted.
Yvette Fields McMillian, David Delard McBride, Tyrone Rogers, and McDowell testified regarding the facts leading up to the killing. The testimony was substantially consistent regarding the first violent encounter between McDowell and Simon; it varied slightly regarding the last encounter, the one that turned deadly.
It was undisputed that McDowell and Simon became involved in an argument and that Simon physically assaulted McDowell. According to McMillian and Rogers, Simon had accused McDowell of stealing his automobile. According to McDowell, they were arguing over McDowell's refusal to let Simon borrow his bicycle. Simon grabbed a lead pipe from Tyrone Rogers, who was standing nearby, and hit McDowell over the head. McDowell, in response, pulled a pistol and pointed it at Simon, but did not fire. McDowell retreated, and Simon chased McDowell, but nothing further occurred between the two at that time.
The evidence is conflicting as to how the last encounter began, but according to McDowell, the following occurred: McDowell returned to Sunset Avenue to retrieve his bicycle, which he had left near the scene of the first altercation. When he arrived there, Rogers informed him that "[Simon] said he was going home to get his pistol. He is going to kill you whenever he sees you." McDowell determined that he should talk to Simon to "try to resolve the issue so nobody [would] get hurt." He then saw Simon in an approaching vehicle. Simon got out of the vehicle, and McDowell started toward him. McDowell backed up because, he said, he could see something in Simon's hand, although from the distance he could not tell what it was. McDowell testified that Simon "was telling me he was going to kill me because I pulled a pistol on him and I didn't shoot him." Simon continued to approach McDowell as McDowell backed up to the curb. Simon threw down the wine bottle he was carrying and said, "Mooney [McDowell's nickname] somebody told me you are going to shoot me in my face." McDowell further testified that at that point Simon "went for his side." He said that he saw "some chrome or something shiny, what I believed to be a pistol." He said that he then "pulled [his] pistol and just started shooting." When asked why he kept shooting, McDowell responded, "Because I was scared. I feared for my life. I feared that he was going to kill me if he got whatever he had on his side." On cross-examination, McDowell steadfastly maintained that he believed that Simon was going to kill him.
Yvette Fields McMillian testified that she was walking with Simon when Rogers called to him before the final altercation; that Simon was carrying a bottle of wine; that Simon walked toward the apartment complex (where the shooting occurred); that she heard arguing; that she assumed the arguing was between McDowell and Simon; that she heard gunshots; that she saw McDowell with a gun and saw "fire coming from the gun"; that McDowell was shooting at Simon; that Simon fell to the ground; and that McDowell ran from the scene. *Page 467 
David Delard McBride testified that he was also walking with Simon immediately before Simon was shot. He testified that Rogers called to Simon; that Simon was carrying a wine bottle; that he and Simon approached Rogers and McDowell; that gunshots were fired; and that, although he was standing only a short distance from Simon, he did not know who fired the shots.
Tyrone Rogers testified that he was present when McDowell and Simon met the last time. He stated that Simon was screaming at McDowell as Simon was walking toward McDowell. Rogers said that he did not understand what Simon was screaming. He stated that he went into his house to answer the telephone, that he returned to the scene when he heard gunshots, and that when he did, McDowell was running away. Rogers was evasive regarding a possible statement he made to McDowell before the shooting.
McDowell raises one issue on appeal. He contends that the trial court erred by refusing to give his written requested jury charges relating to the lesser included offense of "heat-of-passion" manslaughter.[1] Under the facts of this case, the trial court should have instructed the jury on "heat-of-passion" manslaughter.
 "`A person accused of the greater offense has a right to have the court charge on the lesser offenses included in the indictment, when there is a reasonable theory from the evidence supporting his position. Chavers v. State, 361 So.2d 1106
(Ala. 1978); Fulghum v. State, 291 Ala. 71, 277 So.2d 886 (1973); Wiggins v. State, 491 So.2d 1046 (Ala.Cr.App. 1986); Wilkerson v. State, 486 So.2d 509 (Ala.Cr.App. 1986). A court may properly refuse to charge on a lesser included offense only when (1) it is clear to the judicial mind that there is no evidence tending to bring the offense within the definition of the lesser offense, or (2) the requested charge would have a tendency to mislead or confuse the jury. Lami v. State, 43 Ala. App. 108, 180 So.2d 279, cert. denied, 278 Ala. 710, 180 So.2d 282 (1965). Every accused is entitled to have charges given, which would not be misleading, which correctly state the law of his case, and which are supported by any evidence, however weak, insufficient, or doubtful in credibility. Ex parte Stork, 475 So.2d 623
(Ala. 1985); Chavers v. State, supra; Burns v. State, 229 Ala. 68, 155 So. 561
(1934). Section 13A-1-9(b) provides, "The court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense.'
 "`The `safer' practice is to charge upon all degrees of homicide:' (It) is much the safer rule to charge upon all degrees of homicide included in the indictment, when a party is on trial for murder, unless it is perfectly clear to the judicial mind that there is no evidence tending to bring the offense within some particular degree.' Pierson v. State, 99 Ala. 148, 153, 13 So. 550 (1892), approved in Williams v. State, 251 Ala. 397, 399, 39 So.2d 37 (1948).'
 "`Phelps v. State, 435 So.2d 158, 163
(Ala.Cr.App. 1983)."
 "Anderson v. State, 507 So.2d 580, 582-583 (Ala.Crim.App. 1987).
 "The offense of `heat-of-passion' manslaughter is defined in § 13A-6-3(a)(2), Code of Alabama 1975, as follows: *Page 468 
"`(a) A person commits the crime of manslaughter if:
"`. . . .
 "`(2) He causes the death of another person under circumstances that would constitute murder under Section 13A-6-2; except, that he causes the death due to sudden heat of passion caused by provocation recognized by law, and before a reasonable time for the passion to cool and for reason to reassert itself.'
 "`[Section] 13A-6-3(a)(2) is designed to cover those situations where the jury does not believe a defendant is guilty of murder but also does not believe the killing was totally justified by self-defense.' Shultz v. State, 480 So.2d 73, 76 (Ala.Crim.App. 1985). See also Shiflett v. State, 507 So.2d 1056 (Ala.Crim.App. 1987)."
Williams v. State, 675 So.2d 537, 540-41 (Ala.Crim.App. 1996). This court has also stated:
 "The defendant must present evidence of legal provocation to require a charge on heat of passion.
 "`Manslaughter is the unlawful killing of a human being without malice; that is, the unpremeditated result of passion-heated blood — caused by a sudden, sufficient provocation. And such provocation can, in no case, be less than assault, either actually committed, or menaced under such pending circumstances as reasonable to convince the mind that the accused has cause for believing, and did believe, he would be presently assaulted, and that he struck, not in consequence of a previously formed design, general or special, but in consequence of the passion suddenly aroused by the blow given, or apparently about to be given. . . .'"
 "Easley v. State, 246 Ala. 359, 362, 20 So.2d 519, 522
(1944), quoting Reeves v. State, 186 Ala. 14, 16-17, 65 So. 160 (1914)."
 "The mere appearance of an imminent assault may be sufficient to constitute legal provocation to support heat-of-passion manslaughter. Cox v. State, 500 So.2d 1296, 1298 (Ala.Cr App. 1986). `To constitute adequate legal provocation, it must be of a nature calculated to influence the passions of the ordinary reasonable man.' Biggs v. State, 441 So.2d 989, 992 (Ala.Cr.App. 1983)."
Harris v. State, 683 So.2d 26, 28 (Ala.Crim.App. 1996).
In addition, "Provocation has been defined as that treatment by another which arouses anger or passion, which produces in the minds of persons ordinarily constituted the highest degree of exasperation, rage, anger, sudden resentment, or terror. Johnsonv. State, 129 Wis. 146, 108 N.W. 55 1906)." Nelson v. State,511 So.2d 225, 240 (Ala.Crim.App. 1986), aff'd, 511 So.2d 248 (Ala. 1987), cert. denied, 486 U.S. 1017 (1988).
In denying McDowell's requested charges on manslaughter, the trial court stated that because McDowell had testified that his purpose in returning to the scene was to effect a reconciliation, it would be improper to instruct the jury on heat-of-passion manslaughter because McDowell was not "in such a blind fury that he acted regardless of the admonition of the law, in other words, that he was beside himself with fury in the shooting." The trial court failed to recognize that passion encompasses more than the single emotion of fury or rage. Black's Law Dictionary 1124 (6th ed. 1990) defines passion as it relates to manslaughter as "any of the emotions of the mind known as rage, anger, hatred, furious resentment, or terror, rendering the mind incapable of cool reflection." J. Miller, Handbook of Criminal Law § 92(d) (1934), states: "Although the passion of manslaughter is frequently referred to as a passion of anger it may be any of the other emotional outbursts which are referred to as passion as for instance sudden resentment, or fear, or terror, provided only that it result from adequate *Page 469 
provocation and that it be actually the cause of the killing." There was evidence presented that, if believed by the jury, would support a finding that in those moments when Simon was approaching him, McDowell believed that Simon was about to assault him and that McDowell acted out of fear.
It also appears that the trial court concluded that the evidence presented supported a jury charge on either self-defense or "heat-of-passion" manslaughter, but not on both. However, the fact that McDowell argued that he had acted in self-defense did not preclude a jury charge on "heat-of-passion" manslaughter.
 "`Although the labels have now changed with the restructuring of homicide offenses in Alabama's new Criminal Code, the analyses applied in Reeves_[v. State, 186 Ala. 14, 65 So. 160
(1914)] and Roberson [v. State, 217 Ala. 696, 117 So. 412
(1928)] still apply. . . . The Roberson court emphasized that "a defendant who claims self-defense is not thereby precluded from asserting that the homicide was committed under circumstances reducing it to manslaughter, where the evidence before the jury would so authorize." The weight and credibility of appellant's evidence was a matter exclusively within the province of the jury and a proper manslaughter charge was warranted. Dennis v. State, 112 Ala. 64, 20 So. 925 (1896); Roberson v. State, supra. Although the new code restructuring of homicide offenses has helped somewhat, the difficulty of distinguishing between murder and manslaughter in any given case still exists. Therefore, it is still much the safer rule to charge upon all the degrees of homicide included in the indictment when a party is on trial for murder. Dennis v. State, supra. Reeves v. State, supra; Roberson v. State, supra; Phelps v. State[, 435 So.2d 158
(Ala.Cr.App. 1983)], and cases therein cited.'"
Hill v. State, 485 So.2d 808, 809-10 (Ala.Crim.App. 1986), quotingWyllie v. State, 445 So.2d 958, 963 (Ala.Crim.App. 1983).
For the above reason, the trial court's judgment is due to be, and it is hereby, reversed, and the case is remanded.
The foregoing opinion was prepared by Retired Appellate Judge John Patterson while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Ala. Code 1975.
REVERSED AND REMANDED.
LONG, P.J., and McMILLAN, COBB, BROWN, and BASCHAB, JJ., CONCUR.
[1] Although McDowell styles this issue in terms of the written requested jury charges, the body of his argument presents the issue whether the trial court erred on not charging the jury on the offense of manslaughter. The general issue whether the trial court should have charged the jury on manslaughter was presented to the trial court; thus, we will review this issue.