35 So.3d 633 (2006)
Thomas Walter WARREN, Jr.
v.
STATE of Alabama.
CR-04-2100.
Court of Criminal Appeals of Alabama.
April 28, 2006.
Rehearing Denied June 23, 2006.
*634 Erskine R. Mathis, Birmingham, for appellant.
Troy King, atty. gen., and Audrey Jordan, asst. atty. gen., for appellee.
PER CURIAM.
The appellant, Thomas Walter Warren, Jr., was convicted of one count of first-degree robbery, a violation of 13A-8-41, Ala.Code 1975, and one count of first-degree burglary, a violation of § 13A-7-5, Ala.Code 1975. He was sentenced to life imprisonment for each count. Warren was ordered to pay a $500 fine in each case and restitution in the amount of $3,569.64.
The evidence adduced at trial showed the following. On June 10, 2004, Alma Knox was in her residence watching an Atlanta Braves baseball game on television while her 14-year-old grandson, D., mowed her back lawn. The front door to the residence was locked, but the back door had been left unlocked so that D. could come back in. While mowing the grass, D. observed a man subsequently identified as Warren walk from the boat shed located on Knox's property toward Knox's residence. D. was not overly concerned because he assumed that his grandmother knew the man.
Knox was still watching the baseball game when she looked up to find Warren standing a few feet from where she was sitting. He was dressed in blue jeans and a blue and white striped shirt. Warren demanded that Knox give him the keys to her automobile and threatened to kill her if she did not comply. Knox stated, "You're kidding me." In response, Warren raised a large boat anchor he was holding in his right hand and again demanded the keys to the automobile and threatened to kill Knox. Knox was afraid that if Warren hit her with the anchor, she would bleed to death. Frightened, Knox got out of her chair and gave Warren the spare keys to her automobile.
Knox followed Warren through the kitchen. Warren began demanding money, but Knox told him that she was widowed and that she did not have any money. Warren continued to hold the anchor in his hand as he took some food, a lighter, and some cigarettes from the kitchen. Warren told Knox that if she telephoned the police, he would return in less than one hour to kill her. Warren then left in Knox's 1991 dark blue Buick automobile; there was a 150-foot garden hose in the trunk.
After Warren drove away, Knox saw her oldest son, Steve, who lived next door, driving up to the residence in his truck. She screamed for him to follow the man who had just driven away with her automobile. Steve was unable to apprehend Warren and unable to obtain any information related to the robbery. The next time Knox saw her automobile, it had been wrecked.
Officer David Young of the Graysville Police Department arrived at Knox's residence about 1:20 p.m. At that time, Knox was alone. Officer Young went inside, attempted to calm Knox, and gathered the necessary information to complete an incident report. Knox also gave Officer Young a description of the intruder. A "BOLO" alert was issued describing Warren and the 1991 Buick.
*635 Detective John Duchock met Officer Young at Knox's residence, where he was briefed on the details of the incident. Detective Duchock proceeded to the Yerkwood community to investigate, and Officer Young remained at the Knox residence for approximately two hours to ensure Knox's safety. Later that day, Detective Duchock received a telephone call from the Adamsville Police Department stating that Warren "was at his mother's house" and that he was about to leave to return to Graysville. Several minutes later, Detective Duchock passed Warren and attempted to turn his vehicle around to follow Warren. By the time Detective Duchock turned, Warren had fled.
Meanwhile, D. and several other relatives were standing in Knox's front yard. D. saw Warren drive to the road leading to the house, stop Knox's 1991 Buick momentarily, and then drive away. D. immediately told his mother, who in turn telephoned the police. Law enforcement officers responded to the call. Officer Murdock went to Knox's home and Officer Young responded to an alternate location where the vehicle driven by Warren had been sighted earlier. Officer Murdock was driving behind Warren on Highway 78 and notified Officer Young that he was in pursuit of the suspect's vehicle. As the officers attempted to conduct a traffic stop, Warren began to speed and failed to yield at several traffic lights. After several miles, Warren lost control of the vehicle and slid into a ditch. As the officers approached, Warren got out of the vehicle and ran into some nearby woods. A canine unit arrived and after approximately one hour, Warren emerged from the woods with minor injuries.
After his injuries were treated, Warren was transported to the Graysville Police Department. Warren was apprised of his Miranda[1] rights, and he gave a statement to Detective Duchock. In that statement, Warren admitted that he had broken into Knox's residence, that he had demanded money, and that he had stolen her automobile. He stated that he had selected Knox's residence because it appeared that she was wealthy. He stated that there had been a garden hose in the trunk of the automobile, but he traded the hose for $10 worth of crack cocaine.
At trial, Warren testified that on June 9, 2004, he had been riding with another individual who dropped him off in the vicinity of Knox's residence. Warren testified that he slept in the woods that evening. The next day, Warren, assuming that no one was home, decided to enter the residence and take the keys to the automobile that was parked outside the residence. Upon entering the residence, he heard the television. He then stopped in the kitchen to take some food. He testified that, when he saw Knox sitting in her recliner watching television, he approached her and asked for the keys to her automobile. He denied having a weapon and he denied that he threatened Knox in any way; according to Warren, he told Knox that he was not there to hurt her and that he only wanted the keys to her automobile.
Warren testified that Knox got up from the recliner, walked past him, and retrieved a set of keys. She handed him the keys and he left in the automobile. He stated that he told Knox that she could retrieve her automobile from the Winn-Dixie grocery store parking lot later that day. When asked about returning to Knox's residence several hours later, Warren admitted that he returned because he had planned to return Knox's automobile to her, but he said that he left because he was afraid.

*636 I.
Warren contends that the trial court abused its discretion when it failed to instruct the jury on the lesser-included offense of third-degree robbery. Specifically, he claims that, because he testified that he did not use a weapon or threaten the victim in any way during the course of the robbery, he was entitled to such a jury charge. We agree.
The Alabama Supreme Court has made it very clear when a defendant is entitled to a lesser-included jury instruction.
"[O]ur decisions are to the effect that every accused is entitled to have charges given, which would not be misleading, which correctly state the law of his case, and which are supported by any evidence, however weak, insufficient, or doubtful in credibility."
Ex parte Chavers, 361 So.2d 1106, 1107 (Ala.1978); see also Ex parte Stork, 475 So.2d 623, 625 (Ala.1985); Ex parte Wood, 715 So.2d 819, 822 (Ala.1998). This Court has also followed this general rule regarding jury instructions for lesser-included offenses. See, e.g., Thomas v. State, 824 So.2d 1 (Ala.Crim.App.2000); McDowell v. State, 740 So.2d 465 (Ala.Crim.App.1998).
"`"An individual accused of the greater offense has a right to have the court charge on the lesser offenses included in the indictment, when there is a reasonable theory from the evidence supporting his position. [Citation omitted.] A court may properly refuse to charge on lesser included offenses only (1) when it is clear to the judicial mind that there is no evidence tending to bring the offense within the definition of the lesser offense, or (2) when the requested charge would have a tendency to mislead or confuse the jury. [Citation omitted.]"'"
Wilkerson v. State, 486 So.2d 509, 514 (Ala.Crim.App.1986), (quoting Ex parte Stork, 475 So.2d 623, 625 (Ala.1985), (quoting in turn Ex parte Chavers, 361 So.2d at 1107)).
"The accused is entitled to have the trial court charge on lesser included offenses where there is a reasonable theory from the evidence supporting the defendant's position, regardless of whether the State or defendant offers the evidence." Ex parte Pruitt, 457 So.2d 456, 457 (Ala. 1984); Parker v. State, 581 So.2d 1211 (Ala.Crim.App.1990).
"A judge may properly refuse to charge on lesser included offenses only where the only reasonable conclusion from the evidence is that the accused is guilty of the offense charged or no crime at all or where the requested charge would have a tendency to mislead or confuse the jury."
McKeithen v. State, 480 So.2d 36, 37 (Ala. Crim.App.1985).
Section 13A-8-43, Ala.Code 1975, defines third-degree robbery as follows:
"(a) A person commits the crime of robbery in the third degree if in the course of committing a theft he:
"(1) Uses force against the person of the owner or any person present with intent to overcome his physical resistance or physical power of resistance; or
"(2) Threatens the imminent use of force against the person of the owner or any person present with intent to compel acquiescence to the taking of or escaping with the property."
In the instant case, the jury heard evidence that arguably supported the lesser-included offense of third-degree robbery. Warren testified at trial that he did not threaten Knox. He also testified that he was not armed with a boat anchor. This evidence went toward rebutting the presumption *637 that Warren was armed and created a question of fact for the jury as to whether he should be convicted of first-degree robbery or the lesser-included offense of third-degree robbery. Because there was some evidence to support the defendant's claim that he was guilty of only the lesser-included offense of robbery in the third degree, the refusal of the request to instruct the jury on the lesser-included offense constitutes reversible error.
As outlined herein, the judgment of the trial court is due to be reversed, and Warren is entitled to a new trial. We hereby remand this case to the trial court for actions consistent with this opinion.
REVERSED AND REMANDED.
McMILLAN, P.J., and COBB, J., concur.
SHAW, J., concurs in the result.
BASCHAB, J., dissents, with opinion, which WISE, J., joins.
BASCHAB, Judge, dissenting.
In this case, the appellant testified that he took the victim's vehicle, but stated that he did not threaten the victim and that he was not armed with a boat anchor. Nevertheless, he now contends that the trial court should have instructed the jury on the lesser included offense of third-degree robbery, arguing that "[a] robbery 3rd degree charge summarized his entire theory of the case." (Appellant's brief at p. 29.) The Alabama Supreme Court addressed and rejected a similar argument in Ex parte Hannah, 527 So.2d 675, 675-77 (Ala. 1988), as follows:
"The petitioner, Hannah, was arrested, along with codefendant Dixon, for the armed robbery of a tavern named Bentley's in Montgomery, Alabama. Hannah was subsequently convicted of robbery in the first degree, while, in a separate trial, Dixon was determined to be not guilty on a charge of robbery in the first degree. Hannah and Dixon claim that they had agreed to bring the alleged victim of the robbery, Andrew Smith, the owner/manager of Bentley's, some stolen whiskey in return for money that Smith had given to Hannah and Dixon in advance. The two defendants claim that Smith signed warrants accusing them of robbery because they never returned with the whiskey.
"Smith and the assistant manager of Bentley's testified that they had been robbed by Hannah and Dixon at gunpoint. Both Smith and the assistant manager claimed that Dixon held a gun on them while Hannah assisted in the taking of cash from Smith.
"....
"The petitioner contends that he was entitled to a charge on the lesser offense of robbery in the second degree....
"....
"The trial court was not required to give a lesser-offense charge in the present case if there was no evidence tending to bring the offense within the definition of the lesser included offense. Lidge v. State, 419 So.2d 610 (Ala.Crim. App.), cert. denied, 419 So.2d 616 (Ala. 1982), held that robbery in the second degree is a lesser included offense of robbery in the first degree when the `robber is aided by another person actually present and one participant is armed with a deadly weapon or dangerous instrument, or causes physical injury to another.' Id. at 613. In Lidge, the Court of Criminal Appeals appears to indicate that where there is evidence that an armed robbery is committed by two or more persons and one person is unarmed, then the persons accused are necessarily entitled to a charge of robbery *638 in the second degree. This is an incorrect interpretation of the law. A charge of second degree robbery does not always have to be given in such a situation. As the [Ex parte] Chavers [, 361 So.2d 1106 (Ala.1978),] case holds, a court may properly refuse to charge on lesser included offenses when it is clear to the judicial mind `that there is no evidence tending to bring the offense within the definition of the lesser offense.'
"Under the evidence presented, the petitioner could not be convicted of robbery in the second degree. Code 1975, § 13A-2-23, provides: "A person is legally accountable for the behavior of another constituting a criminal offense if, with the intent to promote or assist the commission of the offense: ... (2) He aids or abets such other person in committing the offense....' Therefore, under the evidence presented by the State, the petitioner would be criminally liable for Dixon's act of carrying the gun. Because the petitioner would be criminally liable for the acts of his accomplice, he would be guilty of robbery in the first degree. See Harris v. State, 398 So.2d 777, 779 (Ala.Crim.App.), cert. denied, 398 So.2d 780 (Ala.1981). According to the State's evidence, the petitioner was obviously aware that Dixon was armed with the gun during the actual commission of the robbery. In order for the petitioner to be convicted of robbery in the second degree, there must be evidence that the robbery was committed by two or more persons and that he did not have an intent to commit the armed robbery or knowledge that an accomplice was going to do so. No evidence was presented that would indicate that the petitioner was guilty of robbery in the second degree.
"However, the petitioner did present evidence that the armed robbery never took place. Instead of explaining the facts presented by the State, he presented evidence that a theft was committed when he allegedly tricked Andrew Smith into giving him money. The evidence presented by both sides left the jury with only two possible choices: Hannah either committed theft or he committed robbery in the first degree.

"The evidence presented by the petitioner at trial amounts to a denial that a robbery of any kind occurred. In order for the jury to reach the conclusion that a robbery in the second degree occurred, it would have to conclude that both the witnesses for the petitioner and those for the prosecution were lying. It would then have to somehow infer that what really happened was that the petitioner and Dixon robbed the victim without the use of a deadly weapon, or that the petitioner assisted Dixon with the armed robbery without intent to commit an armed robbery and without knowledge that one was taking place. No evidence exists to support such inferences. The evidence supports only the conclusion that the petitioner was involved either in a theft or in an armed robbery."
(Emphasis added.)
Similarly, in this case, the victim's testimony was sufficient to establish a prima facie case of first-degree robbery, and the appellant denied that any type of robbery occurred. Rather, under his theory of the evidence, he committed a first-degree theft of property. There was not any evidence to support such a conclusion. Therefore, as in Hannah, the evidence supported only the conclusion that the appellant committed a first-degree robbery or a first-degree theft of property. An instruction on third-degree robbery was not appropriate under *639 these facts. Accordingly, I respectfully dissent.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).