[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 322 
 ON RETURN TO REMAND ON APPLICATION FOR REHEARING
The "on return to remand" opinion issued on July 3, 1996, is withdrawn, and the following opinion is substituted therefor.
The appellant, Levi Pace, was convicted of murder made capital because the murder was committed during the course of a robbery. See § 13A-5-40(a)(2), Code of Alabama 1975. The appellant was sentenced to death by electrocution. We remanded this case so that the trial court could hold a hearing on whether blacks were discriminated against in the selection of grand jury forepersons in Morgan County and whether the prosecution discriminated against blacks when making its peremptory strikes to select the jury. Pace v. State,714 So.2d 316 (Ala.Cr.App. 1995).
The trial court has complied with our directions and has held a hearing on the above issues. *Page 323 
 I
The appellant contended that blacks were discriminated against in the selection of grand jury forepersons in Morgan County and that his indictment, therefore, should have been dismissed.
To prove a prima facie case of discrimination in the selection of grand jury forepersons a petitioner must show: 1) that the group alleged to be discriminated against is a distinct group; 2) that the degree of underrepresentation is significant over a period of time; and 3) that the selection procedure is susceptible to abuse or is not race-neutral.Lee v. State, 631 So.2d 1059, 1060 (Ala.Cr.App. 1993), and Lockev. State, 631 So.2d 1062 (Ala.Cr.App. 1993). See also Johnson v.Puckett, 929 F.2d 1067, 1071 (5th Cir.), cert. denied,502 U.S. 898, 112 S.Ct. 274, 116 L.Ed.2d 226 (1991).
At the hearing on remand, the testimony established that blacks comprised a distinct group in Morgan County. Testimony also established that since 1927, the date a record of grand jury proceedings was first kept, no black had ever served as foreperson for a Morgan County grand jury. Testimony also established that the grand jury forepersons were chosen by the judge who presided over grand jury selection on the advice of the district attorney's office. Several judges testified that it was their practice to ask the district attorney who to appoint as grand jury foreperson or, in a few instances, to have the district attorney approve of the name they selected. There is absolutely no question here that a prima facie case of discrimination was proven. The trial court in its order denying the motion agreed. However, once a prima facie case of discrimination has been proven, the burden shifts to the state to rebut the prima facie case. As the United States Supreme Court stated in Alexander v.Louisiana, 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972):
 "Once a prima facie case of invidious discrimination is established, the burden of proof shifts to the State to rebut the presumption of unconstitutional action by showing that permissible racially neutral selection criteria and procedures have produced the monochromatic result. Turner v. Fouche, 396 U.S. 346, 361, 90 S.Ct. 532, 540, 24 L.Ed.2d 567 (1970); Eubanks v. Louisiana, 356 U.S. 584, 587, 78 S.Ct. 970, 973, 2 L.Ed.2d 991 (1958). . . . The Court has squarely held, however, that affirmations of good faith in making individual selections are insufficient to dispel a prima facie case of systematic exclusion. Turner v. Fouche, supra, 396 U.S. at 361, 90 S.Ct. at 540; Jones v. Georgia, 389 U.S. 24, 25, 88 S.Ct. 4, 5, 19 L.Ed.2d 25 (1967); Sims v. Georgia, 389 U.S. 404, 407, 88 S.Ct. 523, 525, 19 L.Ed.2d 634 (1967)."
405 U.S. at 631-32, 92 S.Ct. at 1226, 31 L.Ed.2d at 541. SeeRose v. Mitchell, 443 U.S. 545, 99 S.Ct. 2993, 61 L.Ed.2d 739
(1979) and Castaneda v. Partida, 430 U.S. 482, 97 S.Ct. 1272,51 L.Ed.2d 498 (1976). See also Guice v. Fortenberry,661 F.2d 496 (5th Cir. 1981).
As the United States Supreme Court stated in Hernandez v.Texas, 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866 (1954):
 "To rebut the strong prima facie case of the denial of the equal protection of the laws guaranteed by the Constitution thus established, the State offered the testimony of five jury commissioners that they had not discriminated against persons of Mexican or Latin American descent in selecting jurors. They stated that their only objective had been to select those whom they thought were best qualified. This testimony is not enough to overcome the petitioner's case. As the Court said in Norris v. Alabama, [294 U.S. 587, 55 S.Ct. 579, 79 L.Ed. 1074 (1935)]:
 " 'That showing as to the long-continued exclusion of negroes from jury service, and as to the many negroes qualified for that service, could not be met by mere generalities. If, in the presence of such testimony as defendant adduced, the mere general assertions by officials of their performance of duty were to be accepted as an adequate justification for the complete exclusion of negroes from jury service, the constitutional provision . . . would be but a vain and illusory requirement.' [294 U.S. at 598, 55 S.Ct. at 583] *Page 324 
"The same reasoning is applicable to these facts.
 "Circumstances or chance may well dictate that no persons in a certain class will serve on a particular jury or during some particular period. But it taxes our credulity to say that mere chance resulted in their being no members of this class among the over six thousand jurors called in the past 25 years. The result bespeaks discrimination, whether or not it was a conscious decision on the part of any individual jury commissioner."
347 U.S. at 481-82, 74 S.Ct. at 672, 98 L.Ed. at 872.
The United States Supreme Court, in Turner v. Fouche,396 U.S. 346, 359, 90 S.Ct. 532, 539-40, 24 L.Ed.2d 567 (1970), stated:
 "The testimony of the jury commissioners and the superior court judge that they included or excluded no one because of race did not suffice to overcome the appellant's prima facie case. So far the appellees have offered no explanation for the overwhelming percentage of Negroes disqualified as not 'upright' or 'intelligent'. . . ."
396 U.S. at 360-61, 90 S.Ct. at 540, 24 L.Ed.2d at 569. See also Stephens v. Cox, 449 F.2d 657 (4th Cir. 1971).
The trial court, in finding that the state had rebutted the prima facie case, relied on United States v. Perez-Hernandez,672 F.2d 1380 (11th Cir. 1982), where the Eleventh Circuit Court of Appeals, finding that the state rebutted the prima facie case, stated:
 "Specific criteria for what constitutes a rebuttal case have never been developed[;] however several guidelines are well known. The central focus of a rebuttal case must be on a 'showing that racially neutral selection procedures have produced the disparity.' Alexander v. Louisiana, 405 U.S. at 631-32, 92 S.Ct. at 1226. Moreover, 'affirmations of good faith in making individual selections are insufficient to dispel a prima facie case of systematic exclusion.' Alexander v. Louisiana, 405 U.S. at 632, 92 S.Ct. at 1226. In other words, a mere denial of discriminatory intent will not suffice. Turner v. Fouche, 396 U.S. at 361, 90 S.Ct. at 540. This is not to say, however, that testimony alone is per se insufficient. We believe instead that testimony from the alleged discriminators should be viewed with a great deal of judicial scrutiny. . . . .
 "The government's rebuttal case below consisted entirely of testimony from eight district judges involved in the foreman selection process for the years in question. Each judge testified that he acted independently of the other judges in choosing a grand jury foreman, although each employed similar guidelines in making a selection. These guidelines generally consisted of four separate factors: (1) occupation and work history; (2) leadership and management experiences; (3) length of time in the community; and (4) attentiveness during the jury empanelment. These factors directly related to the ability to perform the administrative functions and duties of a grand jury foreman. This is not a case in which arbitrary and unrelated criteria operated to exclude distinct groups from a position. Cf. Turner v. Fouche, 396 U.S. at 361, 90 S.Ct. at 540 (where jury commissions disqualified blacks because they were not 'upright'). We can think of no better criteria for determining which grand jury member is best able to serve as foreman. We recognize, however, that this criteria potentially can be used in a discriminatory manner. For this reason, the district judge alone is entrusted with the discretion to select a grand jury foremen. Fed.R.Crim.P. 6(c)."
672 F.2d at 1387-88. (Emphasis added.) What the trial court failed to consider when relying on Perez-Hernandez was the fact that the district attorney in Morgan County recommended to the trial court the person he wanted the trial court to select as grand jury foreperson. The situation that existed in this case is not analogous to the situation in Perez-Hernandez, where the judge, without outside advice, selected the grand jury foreperson.
In this case, the judge did not "alone" select the grand jury foreperson. The witnesses called in this case testified that they could not remember one instance when the trial court did not follow the recommendation *Page 325 
of the district attorney. The individuals called to testify, a great many of whom were former district attorneys, stated that they picked the grand jury foreperson on the basis of whether they knew the person and whether that person had a good reputation in the community. One witness, a former district attorney and a former judge in Morgan County, admitted that the criteria he used when recommending a grand jury foreperson to the court was subjective. Of course selection by the district attorney is inherently suspect because unlike the judge, the district attorney is not a neutral court official, but is instead an arm of the sovereign that will prosecute the individual once he or she is indicted by the grand jury.
As the Fifth Circuit Court of Appeals stated in Johnson v.Puckett, 929 F.2d 1067, 1073 (5th Cir.), cert. denied,502 U.S. 898, 112 S.Ct. 274, 116 L.Ed.2d 226 (1991):
 "This court has required that testimony rebutting a prima facie case of discrimination establish the use of objective, racially neutral selection procedures. The rebuttal testimony offered by the State, by contrast, merely indicates that the judges in Panola County never stated or indicated to the circuit clerk that they selected grand jury foremen based on their race; the testimony neither denied the use of racial criteria nor advanced any other objective non-discriminatory criteria used by the judges. This evidence is inadequate to rebut the presumption of discrimination established by petitioner's prima facie case."
As stated above, there was no objective standard employed by Morgan County to select a grand jury foreperson. The selection was, in effect, made by the district attorney. The district attorney's motivation is not at issue here.
Of significance is the fact that the method of selecting grand jury forepersons in Morgan County was changed after the appellant was indicted. The current method is to select the grand jury and then allow the grand jury members to select a foreperson. The current system used in Morgan County may also be subject to abuse given the fact that whites comprise a higher percentage of the population in Morgan County than blacks. Therefore, the current method may well violate the third prong of Lee and Locke and result in discrimination.
A method of choosing a grand jury foreperson that has recently been upheld is that method used by the lower court in Harris v. State, 683 So.2d 26 (Ala.Cr.App. 1996). In Harris, the court had occasion to rule on the racial neutrality of selecting a grand jury foreperson by picking a name out of a hat. This court stated:
 "The appellant now challenges the new selection process because at the time of the new indictment the new procedure had yet to result in a black jury foreperson. Mrs. Byrd testified that under the new procedure all the grand jury member's names are placed in a hat and the judge selects one name. The person selected is asked if he or she would like to serve as the foreperson. The appellant has not established a prima facie case of discrimination because he failed to satisfy the third prong of Lee. This selection method is race-neutral; therefore, the trial court was correct in denying the appellant's motion to dismiss."
683 So.2d at 30-31.
The indictment against the appellant should have been dismissed because of discrimination in the selection of the grand jury foreperson in Morgan County. Of course, the appellant may be reindicted.
Although we must reverse the judgment in this case on this issue, the appellant presents other instances of reversible error and we will address those in this opinion. Furthermore, we will address any remaining issues that may arise in any subsequent proceedings.
 II
The appellant contends that the trial court erred by refusing to strike for cause two prospective jurors who indicated their strong support for the death penalty. Specifically, the appellant contends that the responses given by prospective juror B and juror G to questions during voir dire indicated that they would have voted for the death penalty even *Page 326 
if the evidence and the court's instructions called for a recommendation of life imprisonment without parole. The following occurred during voir dire:
 "MR. TERRY [defense counsel]: If the Judge instructs you that there are two — if you were to convict, if the Judge instructs you that there are two possible sentences in this case, life without possibility of parole and the electric chair, would you consider both of those? Would you consider life without parole along with considering the electric chair? Would you consider both of those before you made a recommendation? Mr. [B.], would you consider both of those?
"JUROR [B.]: I would consider them, I guess.
". . . .
 "MR. TERRY: Now, is there anyone that feels that at any time a life has been taken — I think we all agree that we feel life is precious, but is there anyone that feels that anytime a life is taken and if you are sitting on a jury, then you have a responsibility and a duty to make that other person burn for that? Do you feel in every case that if a life has been taken, there is only one possible sentence and that has to be death?
". . . .
 "MR. TERRY: Would each of you allow for the possibility of life without parole? Mr. [G.], would you allow for that possibility?
"JUROR [G.]: It's an eye for an eye, isn't it?
 "MR. TERRY: That's what the Old Testament says but the New Testament says that's not so. Would each one of you allow for and consider all the factors that the Judge tells you to consider? Mr. Nelson went through it while ago about aggravating factors and mitigating factors. Would each one of you go into listening to the Judge's instructions as to what the law is and not being close minded and not saying 'I don't care what the facts are, dog-gone-it if we convict him it's the electric chair?' No more questions asked, period? Whatever the facts were, whatever the factors were, whatever the evidence is, my mind is made up. Is there anyone like that? Your mind is made up and you will not consider anything else? Mr. [G.], would you consider any other sentence other than death?
"JUROR [G.]: I don't think so.
"MR. NELSON: What did he say?
 "MR. TERRY: He said he didn't think so. Mr. [B.], would you consider any other —
 "JUROR [B.]: If all the facts were there and everything.
"MR. TERRY: After you heard all the facts?
 "JUROR [B.]: I wouldn't consider anything else but the death penalty.
 "MR. TERRY: Mr. [G.] and Mr. [B.], I will ask these questions concerning the two of you. If the Judge were to instruct you that the law in this State is that there are certain mitigating factors that you could consider in recommending a sentence and, like Mr. Burrell hypothetically questioned you a while ago, assume for a minute those mitigating factors are there that the Judge says the law allows for, you are required by law to consider and by your oath as a juror you are to consider, would you consider those and if they were present and if it were a situation where the mitigating factors were there and under the Judge's instructions you had to recommend life without parole, would you follow your oath as a juror and do that or would death be the only penalty you think is appropriate?
 "JUROR [B.]: What choice would you have if he told you to do that?
 "MR. TERRY: Well, assume he tells you what the law is and that under the law this is what your decision should be as you apply it to the facts as you found them, but he sends you out into the jury room to go and vote on a recommendation that you're going to come back in here and present to him as a group of 12 people, would your vote still be for death?
"JUROR [B.]: I think it would.
 "MR. TERRY: And Mr. [G.], the same question to you.
"JUROR [G.]: (Nodding head affirmatively) *Page 327 
 "MR. TERRY: It still would be for the death penalty?
"JUROR [G.]: (Witness nodding head affirmatively)
 "MR. TERRY: Would you feel like under those circumstances that it's your duty — the question I ask you, it would be your duty regardless to come back with a recommendation of death, Mr. [B.]?
"JUROR [B.]: I think so.
"MR. TERRY: How about you, Mr. [G.]?
"JUROR [G.]: (Nodding head affirmatively)"
The responses of the prospective jurors indicated that they both felt it was their duty to recommend a sentence of death, regardless of the circumstances. This court, in Coral v. State,628 So.2d 954 (Ala.Cr.App. 1992), articulated the standard used in evaluating this issue. The court stated:
 " '[T]he proper standard for determining when a prospective juror may be excluded for cause because of his . . . views on capital punishment is . . . whether the juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.' " Wainwright v. Witt, 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985) (quoting Adams v. Texas, 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980)). It is not required that a prospective juror's bias in this regard be proved with "unmistakable clarity." Id. 469 U.S. at 424, 105 S.Ct. at 852.
 " '[M]any veniremen simply cannot be asked enough questions to reach the point where their bias has been made "unmistakably clear"; these veniremen may not know how they will react when faced with imposing the death sentence, or may be unable to articulate, or may wish to hide their true feelings. Despite this lack of clarity in the printed record, however, there will be situations where the trial judge is left with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law. This is why deference must be paid to the trial judge who sees and hears the juror.' "
628 So.2d at 970. See also Morrison v. State, 601 So.2d 165, (Ala.Cr.App. 1992).
The juror's responses clearly indicated that they could not decide the case on the evidence presented. These prospective jurors should have been struck for cause. Reversible error occurred here.
 III
The appellant next contends that the trial court denied him the basic right of self-representation. The record reflects that before the trial began, the appellant told the trial court that he wished to represent himself and that he wanted his appointed lawyers to be removed from the case. The following occurred at the appellant's arraignment:
"The Court: Are you ready for arraignment?
 "Mr. Wesley Lavender [defense counsel]: I am, Judge. He indicated he wanted to represent himself, but I wanted the Court to be made aware of that, but I am prepared for arraignment.
 "The Court: I hadn't heard him say that. If he did say that, I wouldn't allow it, so if you want to say it you can say it.
"The Defendant: I want to represent myself.
"The Court: Disallowed.
"The Defendant: Disallowed?"
"The Court: That's what I said."
The trial court refused to entertain the appellant's request. This was error. As this court stated in Ford v. State,515 So.2d 34 (Ala.Cr.App. 1986), aff'd, 515 So.2d 48 (Ala. 1987):
 "The accused has a constitutional right to self-representation, Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), and that right is applicable in capital cases, see Goode v. Wainwright, 704 F.2d 593, 598 (11th Cir.), rev'd on other grounds, 464 U.S. 78, 104 S.Ct. 378, 78 L.Ed.2d 187 (1983); People v. Teron, 23 Cal.3d 103, 588 P.2d 773, 151 Cal.Rptr. 633, (1979); Smith v. State, 407 So.2d 894 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2260, 72 L.Ed.2d 864 (1982); Goode v. State, 365 So.2d 381
(Fla. 1978), cert. denied, *Page 328 441 U.S. 967, 99 S.Ct. 2419, 60 L.Ed.2d 1074
(1979); Bishop v. State, 95 Nev. 511, 597 P.2d 273
(1979); Commonwealth v. Davis, 479 Pa. 274, 388 A.2d 324 (1978)."
515 So.2d at 40. See also Arthur v. State, 711 So.2d 1031
(Ala.Cr.App. 1996).
The court should have held a hearing on the appellant's request to represent himself. See Faretta v. California,422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). The trial court erred in unilaterally denying the appellant's request. In any future proceedings, the trial court should comply with Faretta
if the appellant expresses a desire to represent himself.
 IV
On remand, we instructed the court to hold a hearing pursuant to Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712,90 L.Ed.2d 69 (1986). Because it is necessary to reverse this case for a new trial on the issue of discrimination on the selection of the grand jury foreperson, it is unnecessary to go into the specifies of this case as they relate to to the Batson
question. However, we note, for the trial court's consideration, the recent Alabama Supreme Court case of Exparte Bruner, 681 So.2d 173 (Ala. 1996).
 V
The appellant further contends that he was prejudiced when one of the state's witnesses, Linda Jones, testified that she had previously bought "crack" cocaine from the appellant. The following occurred during the direct examination of Jones:
 "Q [prosecutor]: You don't know nothing about that crack house there at the park?
 "A [Jones]: No, because they sell it outside. I'm telling you where I buy mine from. As a matter of fact, I used to buy from Levi Pace too.
 "Mr. Nelson [defense counsel]: Judge, we move to exclude that answer and ask for a mistrial in this case.
 "The Court: I will exclude the answer and deny the motion for a mistrial."
This evidence was certainly inadmissible and the trial court's ruling was correct. C. Gamble, McElroy's AlabamaEvidence, § 69.01 (4th ed. 1991). Although the judge sustained the appellant's objection, he never instructed the jury to disregard the evidence. If this issue is presented to the trial court in any future proceedings, we caution the court that prejudice may occur when a jury is not instructed to disregard such a prejudicial remark.
 VI
The appellant further contends that the trial court erred in allowing the admission of a case action summary sheet at the sentencing phase that showed that the appellant had been previously charged with murder. The record reflects that the state introduced a case action summary sheet that reflected that the appellant had pleaded guilty to robbery and attempted assault. This exhibit also reflected that the appellant had been charged with murder, but that he had not pleaded guilty to this offense; that, in fact, the charge had been dismissed. The admission of this exhibit showing that the appellant had been charged with a crime for which he was not convicted resulted in extreme prejudice to the appellant. Of course, evidence that the appellant had previously been convicted of robbery and attempted assault was admissible.
At the sentencing phase of a capital offense, the state has the burden of proving any aggravating circumstances that might apply to the case and of disproving any possible mitigating circumstances that might be present. The appellant was not convicted of the offense with which he was charged and the statutes that contain the aggravating and mitigating circumstances, §§ 13A-5-49 and 13A-5-51, clearly apply to those criminal activities that have resulted in convictions, or as this court stated in Cook v. State, 369 So.2d 1251, 1257
(Ala. 1978), to those activities that "rise to the level established by the legislature."
Evidence of an offense as to which the charge has been dismissed should not be received at the penalty phase of a capital trial. Such evidence results in extreme prejudice to the appellant — especially, in a case *Page 329 
such as this case, where the charge dismissed was murder.
 VII
The appellant further contends that evidence received concerning collateral offenses not charged in the indictment denied him a fair hearing. First, the appellant questions the admission of evidence of two other instances where motel employees were robbed and one instance where two employees were shot. The first instance was a shooting that occurred several days after the instant offense, at the Alabama Lodge motel in Clanton. One of the victims testified in detail as to how the appellant and an accomplice came into the office looking for a room. The appellant then pointed a gun at her and she bent down behind the counter. The appellant shot her several times. Her husband then entered the office and the appellant shot at him several times, hitting him twice. The appellant contends that this evidence was extremely prejudicial and that, therefore, it should have been excluded and that even if it was correctly received at trial the state should not have been allowed to establish the circumstances of the crime with such particularity.
Generally, evidence of a collateral offense should not be received into evidence at the trial of an unrelated offense. However, there are certain exceptions to this general exclusionary rule that have long been recognized by the appellate courts of this state. The exceptions and the standard used to determine whether such evidence should be received at trial were discussed by this court recently inBush v. State, 695 So.2d 70 (Ala.Cr.App. 1995). In Bush this court stated:
 "Evidence of any offense other than that specifically charged is prima facie inadmissible. Nicks v. State, 521 So.2d 1018 (Ala.Cr.App. 1987), aff'd, 521 So.2d 1035 (Ala.), cert. denied, 487 U.S. 1241, 108 S.Ct. 2916, 101 L.Ed.2d 948 (1988). However, evidence of collateral crimes or bad acts is admissible as part of the prosecutor's case if the defendant's collateral misconduct is relevant to show his guilt other than by suggesting that he is more likely to be guilty of the charged offense because of his past misdeeds. Nicks v. State; Brewer v. State, 440 So.2d 1155 (Ala.Cr.App. 1983); C. Gamble, McElroy's Alabama Evidence, § 69.01(1) (4th ed. 1991). Before its probative value will be held to outweigh its potential prejudicial effect, the evidence of a collateral crime must not only be relevant, it must also be reasonably necessary to the state's case, and it must be plain and conclusive. Averette v. State, 469 So.2d 1371
(Ala.Cr.App. 1985). If evidence of the accused's commission of another crime is admissible, the state may prove in meticulous detail the manner in which the accused committed such other crime. Nelson v. State, 511 So.2d 225, 234
(Ala.Cr.App. 1986), aff'd, 511 So.2d 248 (Ala. 1987), cert. denied, 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988); Weatherford v. State, 369 So.2d 863
(Ala.Cr.App.), cert. denied, 369 So.2d 873 (Ala.), cert. denied, 444 U.S. 867, 100 S.Ct. 141, 62 L.Ed.2d 91 (1979); McElroy's, § 69.02(8). The generally recognized exceptions to the general exclusionary rule, or tests for relevancy, whereby evidence of collateral crimes or acts may be admitted are as follows:
 " '(1) Relevancy to prove physical capacity, skill, or means to commit the now-charged crime; (2) part of the res gestae or part of a continuous transaction; (3) relevancy to prove scienter or guilty knowledge; (4) relevancy to prove criminal intent; (5) relevancy to prove plan, design, scheme, or system; (6) relevancy to prove motive; (7) relevancy to prove identity; (8) relevancy to rebut special defenses; and (9) relevancy in various particular crimes.'
 "Nelson v. State, 511 So.2d 225, 233
(Ala.Cr.App. 1986); Twilley v. State, 472 So.2d 1130
(Ala.Cr.App. 1985). All of the exceptions relate to the relevancy of the evidence, which means that evidence of separate and distinct crimes is admissible only when the evidence is relevant to the crime charged. Mason v. State, 259 Ala. 438, 66 So.2d 557 (1953); Nicks v. State. If the evidence is not so remote as to lose its relevancy, the decision to allow or to not allow evidence of collateral crimes or acts as part of the state's case rests in the *Page 330 
sound discretion of the trial court. McGhee v. State, 333 So.2d 865 (Ala.Cr.App. 1976)."
695 So.2d at 85. See also Finley v. State, 661 So.2d 762
(Ala.Cr.App. 1993), on remand, 661 So.2d 762 (Ala.Cr.App. 1995);Malone v. State, 659 So.2d 1006 (Ala.Cr.App. 1995); Miles v.State, 650 So.2d 583 (Ala.Cr.App. 1994).
Here, the appellant was charged with killing Jerry Hargrove, the night clerk at the Days Inn motel in Decatur. Linda Jones, the appellant's accomplice, testified that they entered the office through a rear door and the appellant pointed a gun at Hargrove. She said that Hargrove ran from the counter to a room behind the counter and that he came back with a gun. The appellant then shot Hargrove. He died as a result of the gunshot wound.
The trial court, in admitting evidence of the Alabama Lodge robbery and shooting, stated that the evidence met an exception to the general exclusionary rule because it was relevant to show a plan or scheme. Certainly, in this case where the witness testifying as to the facts surrounding the robbery and murder was an accomplice and where her testimony had been discredited because of prior convictions, it was necessary for the state to establish, by other means, the appellant's scheme of robbing clerks of motels. This evidence was correctly received at trial.
The appellant also questions the admission of evidence of a third robbery that occurred at the same Days Inn involved in this case. This robbery occurred several months before the robbery in this case. The clerk on duty at the time of the robbery testified that the appellant entered the office and questioned her about an employee of the Inn. He left and returned shortly thereafter and inquired about room prices. He then pulled a gun on her and demanded money. This evidence was also correctly received for the reasons discussed above.
Furthermore, as stated in Bush, the state may prove the circumstances surrounding the collateral offense in "meticulous detail." See C. Gamble, McElroy's Alabama Evidence, § 69.01(8) (4th ed. 1991), which states: "If the accused's commission of another crime is admissible in a present prosecution, the state may prove in meticulous detail the manner in which the accused committed such other crime."
We note that the appellant was tried before the Alabama Rules of Evidence became effective on January 1, 1996. In any subsequent proceeding the new rule governing the admission of collateral crimes contained in Rule 404(b), Ala.R.Evid., must be followed. This rule states:
 "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial."
 VIII
The appellant also contends that the trial court erred in denying his motion seeking "expanded" discovery. The appellant sought to have the court order the state to locate and produce evidence from various entities including several county jails, the Alabama Department of Corrections, and the Taylor Hardin Secure Medical Facility. The appellant contends that the Alabama Supreme Court's holding in Ex parte Monk,557 So.2d 832 (Ala. 1989), requires the state to produce more than what is in its possession or control because "[t]he hovering death penalty is the special circumstance justifying broader discovery in capital cases." 557 So.2d at 836-837. In Monk, the Alabama Supreme Court upheld the trial court's order to maintain an ongoing "open file" policy.
There is no constitutional right to discovery in a criminal case; discovery is governed by Rule 16, Ala.R.Crim.P.Jefferson *Page 331 v. State, 645 So.2d 313 (Ala.Cr.App. 1994). What the appellant sought in this case was full-blown discovery equivalent to that in a civil case. While the decision in Monk broadened discovery in capital cases, a prosecutor in a criminal case is not required to disclose evidence the prosecutor does not possess, except that evidence that is imputed — such as knowledge of law enforcement agents. Duncan v. State, 575 So.2d 1208
(Ala. 1991). The state turned over to the appellant a copy of its entire case file and maintained an ongoing "open file" policy like that in Monk. The trial court did not err in denying the appellant's motion.
 IX
The appellant further asserts that the trial court erred by limiting the funds made available to him for expert and investigative assistance. The appellant filed a motion for investigative expenses, requesting $3,000. The appellant also filed a "motion to provide for funds for expert psychiatric and psychological assistance," requesting up to $5,000 for a psychiatrist and up to $3,000 for a psychologist. The trial court granted $1,200 for expenses to retain a medical expert and $1,000 for investigative expenses. The appellant contends that by limiting the funds available to him for medical and investigative purposes the trial court violated his constitutional rights.
 "In Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087
84, L.Ed.2d 53 (1985), the United States Supreme Court held that an indigent defendant is entitled, under the Due Process Clause of the United States Constitution, to expert psychiatric assistance when the defendant's sanity is a significant issue. The Supreme Court expressed concern that the indigent defendant have access to a 'competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense.' Ake, 470 U.S. at 83, 105 S.Ct. at 1096.
 "The Supreme Court did not address the precise issue whether an indigent defendant would be entitled to the assistance of a psychiatric expert when diminished mental capacity, rather than insanity, is the issue at trial, or when diminished mental capacity is the issue at a capital sentencing hearing.
 "However, in Dubose v. State, 662 So.2d 1189
(Ala. 1995), this Court held that the Ake principles relating to assistance of experts are not limited to psychiatrists. The Ake principles, which are grounded in the due process guarantee of fundamental fairness, apply to assistance by nonpsychiatric experts when an indigent defendant makes a proper showing that the requested assistance is needed in order for the defendant to have 'a fair opportunity to present his defense.' Dubose, 662 So.2d at 1194. Specifically, a defendant, in order to be entitled to funds to pay for an expert, must show more than a mere possibility that he or she will receive useful assistance from the expert. Rather, the defendant must show a reasonable probability that the expert would aid in the defense and that the denial of an expert to assist at trial would result in a fundamentally unfair trial. In the past, Alabama decisions have been based upon whether the defendant made an adequate showing of a need for the requested expert. Dubose, 662 So.2d at 1192; See also, Smith v. State, 623 So.2d 369
(Ala.Cr.App. 1992), cert. denied, 510 U.S. 1030, 114 S.Ct. 650, 126 L.Ed.2d 607 (1993); McLeod v. State, 581 So.2d 1144 (Ala.Cr.App. 1990); Siebert v. State, 562 So.2d 586 (Ala.Cr.App. 1989), aff'd, 562 So.2d 600 (Ala.), cert. denied, 498 U.S. 963, 111 S.Ct. 398, 112 L.Ed.2d 408 (1990); Stewart v. State, 562 So.2d 1365 (Ala.Cr.App. 1989); McGahee v. State, 554 So.2d 454 (Ala.Cr.App. 1989), aff'd, 554 So.2d 473 (Ala. 1989)."
Ex parte Dobyne, 672 So.2d 1354, 1357-58 (Ala. 1995).
The trial court granted the appellant's motion for funds to hire a psychologist and a psychiatrist. The appellant has presented no evidence that he was denied an opportunity to present his defense or that the fact that the funds were limited denied him a fair trial. Further, the appellant could have applied, but did not apply, for additional funds from the trial court. The court did not err by *Page 332 
limiting the amount of funds requested by the appellant.
For the reasons discussed above, the judgment in this case is reversed and the cause remanded to the Circuit Court for Morgan County for proceedings not inconsistent with this opinion.
OPINION OF JULY 3, 1996, WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED; APPLICATION FOR REHEARING OVERRULED; RULE 39(k) MOTION DENIED.
All the Judges concur.