714 So.2d 332 (1997)
Ex parte State of Alabama.
(In re Levi PACE
v.
STATE).
1960029.
Supreme Court of Alabama.
August 29, 1997.
Rehearing Denied November 14, 1997.
*333 Bill Pryor, atty. gen., and Joseph G. L. Marston III, asst. atty. gen., for petitioner.
J. Timothy Kyle, Decatur; and Arthur Orr, Decatur, for respondent.
BUTTS, Justice.
We granted the State's petition for a writ of certiorari in order to answer a question of criminal law we believe has been not fully resolved by the Court of Criminal Appeals. In Pace v. State, 714 So.2d 320 (Ala.Cr.App. 1996), that court reversed Levi Pace's conviction for capital murder[1] on the following grounds: (1) that black persons were discriminated against in the selection of grand jury forepersons in Morgan County and Pace's indictment should have been dismissed by the trial court;[2] (2) that the trial court should have struck two prospective jurors for cause based on their answers to questions during voir dire that indicated they would have voted to impose the death penalty even if the court's instructions called for a sentence of life imprisonment without parole under the facts of the case; (3) that when Pace indicated to the trial court that he wanted to represent himself during arraignment *334 the trial court should have held a hearing on Pace's request and the court erred in unilaterally denying it; and (4) that the trial court erred in admitting into evidence during the penalty phase of the trial a case action summary sheet indicating that Pace had previously been charged with murder, that on that previous charge he had pleaded not guilty, and that that charge had been dismissed.

I.
This case has had an unusual history in the Court of Criminal Appeals. In a May 26, 1995, opinion, that court remanded the case for the trial court to hold a hearing, in accordance with Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), regarding Pace's allegation that the prosecutor's strikes of black prospective jurors during voir dire examination was motivated by racial reasons. That opinion was later withdrawn on application for rehearing; the substituted opinion, released on July 28, 1995, remanded the case for not only a Batson hearing, but also a hearing on Pace's allegation that black persons had been systematically discriminated against in the selection of grand jury forepersons in Morgan County solely on the basis of their race. In that opinion, the Court of Criminal Appeals stated, with regard to the issue involving the selection of the grand jury foreperson: "There is no question that [Pace's] motion [to dismiss his indictment] was not timely. However, this is a case involving the death penalty and this court is obliged to search the record for plain error. Rule 45A, Ala.R.App.P." 714 So.2d at 320.
On return to the Court of Criminal Appeals following remand, that court on July 3, 1996, issued an opinion reversing Pace's capital murder conviction and his death sentence, based on his having proven racial discrimination in the selection of grand jury forepersons in Morgan County, and based on other findings of reversible error. In relation to the issue involving the selection of the grand jury foreperson, the court quashed Pace's capital murder indictment and stated that he could be reindicted. However, in that opinion the Court of Criminal Appeals did not say whether it had applied a "plain error" analysis to the issue involving discrimination in the selection of the grand jury foreperson. On application for rehearing, the Court of Criminal Appeals, on September 27, 1996, withdrew its July 3, 1996, opinion and substituted a new opinion; that September 27, 1996, opinion also reversed Pace's conviction and sentence and quashed his indictment based on his showing of racial discrimination in the selection of grand jury forepersons. The September 27 opinion also failed to state whether the Court of Criminal Appeals had applied a "plain error" analysis to that issue.
The State contends that the Court of Criminals Appeals applied a "plain error" analysis to the issue involving discrimination in selection of grand jury forepersons, but that the error in the selection of the grand jury foreperson was not "plain error" and, therefore, that the Court of Criminal Appeals erred in reversing Pace's conviction on that ground and erred in quashing his indictment. We granted the State's petition for a writ of certiorari to determine whether, on the basis of that particular allegation of error, the Court of Criminal Appeals correctly reversed Pace's conviction and quashed his indictment. We also consider certiorari review necessary in this case to prevent confusion among the members of the bench and bar of Alabama in an important area of criminal law.
Based on our own review of the trial court record, we conclude that Pace's motion to dismiss his indictment based on alleged racial discrimination was not timely. Rule 12.9, Ala.R.Cr.P., requires that a motion to dismiss an indictment be filed before the defendant is arraigned on the charge stated in the indictment. The only exceptions in Rule 12.9 to the pre-arraignment timing for moving to dismiss an indictment are that when the trial court sets a later deadline or when counsel is appointed for the first time at arraignment, an additional reasonable length of time is allowed for the defendant to move to dismiss the indictment. In this case, the trial court did not set a post-arraignment deadline for Pace to move to dismiss his indictment, and, although Pace had a change of appointed counsel after his arraignment, his original appointed counsel was appointed before arraignment and had the opportunity *335 to file a motion to dismiss Pace's indictment prior to arraignment, but did not do so.
Generally, absent a timely objection to an alleged error and a ruling by the trial court, there is nothing for this Court to review. Biddie v. State, 516 So.2d 846 (Ala. 1987). However, because Pace was sentenced to death following his conviction on the charge of capital murder, his failure to make a timely motion to dismiss his indictment does not preclude our review of this issuein death penalty cases, both the Court of Criminal Appeals and this Court take notice of any "plain error." Rules 39(k), 45A, Ala.R.App.P.

II.
In Lee v. State, 631 So.2d 1059 (Ala.Cr. App.1993), and Locke v. State, 631 So.2d 1062 (Ala.Cr.App.1993), the Court of Criminal Appeals held that a criminal defendant's constitutional right to equal protection under the law has been violated if racial discrimination occurred in the selection of the foreperson of the grand jury that returned the indictment and that that error requires that the indictment be quashed. Quoting from Johnson v. Puckett, 929 F.2d 1067 (5th Cir.), cert. denied, 502 U.S. 898, 112 S.Ct. 274, 116 L.Ed.2d 226 (1991), the Court of Criminal Appeals also held that because the denial of equal protection caused by such discrimination is an injury to society as a whole, it does not matter whether the defendant is a member of the racial group discriminated against.[3]
In both Lee and Locke the defendants had been convicted of murder, but neither had been sentenced to death. In Lee and Locke, a timely objection preserved for appellate review the issue of discrimination in the selection of grand jury forepersons; thus, the issue whether discrimination in the selection of grand jury forepersons is "plain error" under Rule 45A was not decided by the Court of Criminal Appeals in those cases. Nor has this Court previously determined whether such discrimination constitutes the "plain error" we are required by Rule 39(k), Ala.R.App.P., to recognize.
Plain error is "error that has or probably has adversely affected the substantial rights of the petitioner." Rule 39(k). "[T]he plain-error exception to the contemporaneous-objection rule is to be `used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.'" United States v. Young, 470 U.S. 1, 15, 105 S.Ct. 1038,1046, 84 L.Ed.2d 1 (1985), quoting United States v. Frady, 456 U.S. 152, 163, n. 14, 102 S.Ct. 1584, 1592, n. 14, 71 L.Ed.2d 816 (1982).

A.
We take guidance from two landmark opinions from the United States Supreme Court that discussed discrimination in the selection of grand jury forepersons. In Rose v. Mitchell, 443 U.S. 545, 99 S.Ct. 2993, 61 L.Ed.2d 739 (1979), the Supreme Court assumed, without deciding, that discrimination in the selection of a grand jury foreperson from among the members of the grand jury violates a criminal defendant's rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and requires that a conviction be set aside. However, several years later, in Hobby v. United States, 468 U.S. 339, 104 S.Ct. 3093, 82 L.Ed.2d 260 (1984), the Supreme Court held that discrimination in the selection of a federal grand jury foreperson did not violate the Due Process Clause of the Fifth Amendment. The Supreme Court stated that when the role of a grand jury foreperson is merely ministerial in nature, "discrimination in the selection of one person from among the members of a properly constituted grand jury can have little, if indeed any, appreciable effect upon the defendant's due process right to fundamental fairness." 468 U.S. at 345, 104 S.Ct. at 3096-97. In discussing the Rose opinion, the Hobby Court noted that the role of the Tennessee grand jury foreperson at issue in Rose differed substantially from the ministerial role of a federal grand jury foreperson in that the Tennessee foreperson is charged with substantial power, including the duty to assist the district attorney in investigating the crime and the privilege of a virtual veto over *336 the indictment process. The Hobby Court distinguished Rose as follows:
"Given the nature of the constitutional injury alleged in Rose [equal protection], the peculiar manner in which the Tennessee grand jury selection operated, and the authority granted to the one who served as foreman, the Court assumed in Rose that discrimination with regard to the foreman's selection would require the setting aside of a subsequent conviction, `just as if the discrimination proved had tainted the selection of the entire grand jury venire.' Rose v. Mitchell, 443 U.S., at 551-552, n. 4 [99 S.Ct., at 2997-2998, n. 4]. No such assumption is appropriate here, however, in the very different context of a due process challenge by a white male to the selection of foremen of federal grand juries."
468 U.S. at 349, 104 S.Ct. at 3098. Thus, while Rose held that discrimination in the selection of a grand jury foreperson is an equal protection violation, Hobby held that such discrimination is not a due process violation where the role of the foreperson is ministerial.
In Lee, supra, the Court of Criminal Appeals noted the holding in Hobby, but stated: "The argument that a black defendant's due process rights were not violated because the grand jury foreman's responsibilities were largely ministerial was rejected in Johnson [v. Puckett], 929 F.2d at 1071 [(5th Cir.), cert. denied, 502 U.S. 898, 112 S.Ct. 274, 116 L.Ed.2d 226 (1991)]." 631 So.2d at 1061. This Court granted a petition for the writ of certiorari, to review the Lee opinion, but later quashed the writ as having been improvidently granted. Given today another opportunity to review Lee, we overrule it, for the reason explained below, to the extent that it holds that a criminal defendant's due process rights are violated by racial discrimination in the selection of a grand jury foreperson from a properly constituted Alabama grand jury.
In this state, the function of a grand jury foreperson is almost entirely ministerial in nature, very similar to that of a federal grand jury foreperson. See Noah v. State, 494 So.2d 870 (Ala.Cr.App.1986). Thus, as the United States Supreme Court held in Hobby, if there is no discrimination in the selection of the members of the grand jury, any discrimination in the selection of a foreperson from among those members can have no more than an incidental effect on the defendant's due process right and does not rise to the level of a violation of that right. We conclude that the Court of Criminal Appeals misinterpreted Johnson, which specifically dealt with an allegation of violation of a defendant's right to equal protection of the laws, not his right to due process.[4] Thus, Johnson cannot be relied on for the proposition for which the Court of Criminal Appeals cited it in Lee.

B.
The voluminous record of this case discloses that the Court of Criminal Appeals correctly held that Pace has proven that Morgan County engaged in a lengthy history of racial discrimination in selecting grand jury forepersons, including the foreperson of the grand jury that indicted him. Thus, based on the United States Supreme Court's opinion in Rose, and following the reasoning of the Court of Criminal Appeals in Lee and Locke, we conclude that Pace's constitutional right to equal protection was violated. However, as we have noted above, because Pace failed to make a timely motion to quash his indictment on that basis, the "contemporaneous *337 objection rule" does not apply, and we must determine whether the equal protection violation raised by Pace rises to the level of "plain error" under Rule 39(k), Ala.R.App.P.
After thorough consideration, we conclude that it does not. We addressed this issue to a certain extent in Ex parte Robin Myers, 699 So.2d 1285 (Ala.1997); in that case, the defendant Myers, who was sentenced to death for capital murder, had been indicted by a Morgan County grand jury seven months before Pace was indicted by a Morgan County grand jury. Myers argued for a reversal of his conviction and a dismissal of his indictment, based on the Court of Criminal Appeals' opinion in Pace, supra. We stated in Ex parte Robin Myers:
"The record is silent with respect to the racial composition of the grand jury that returned the indictment against Myers. In effect, by relying on Pace, Myers is requesting that we dismiss the indictment against him based on an intermediate appellate court's nonfinal holding that is now pending before this Court on certiorari review. We decline this request, `for to [accept it] would unduly enlarge the scope of the plain error review as authorized by our appellate rules.' Ex parte McNair, [653 So.2d 353, 360 (Ala.1994)]; see, also, Ex parte Watkins, 509 So.2d 1074 (Ala. 1987). We find nothing in the record that would justify a dismissal of the indictment."
Myers, 699 So.2d at 1296 (footnote omitted). However, in a footnote in Myers, this Court noted the United States Supreme Court's opinions in Rose and Hobby and stated, in dicta, that "a review under the plain error rule, which guarantees a defendant a fundamental right to fairness, is tantamount to a due process review."[5]Id. at 1298, n. 4. In further dicta based on Hobby, we concluded that any discrimination in the selection of the foreperson of Myers's grand jury did not rise to the level of plain error, because Myers had not shown that the grand jury was itself improperly constituted and because the role of a grand jury foreperson in Alabama is primarily ministerial. Id.
We now hold what we implied in Myersthat if there was no discrimination in the selection of the members of a particular grand jury, then racial discrimination in the selection of a grand jury foreperson from among the members of that properly constituted grand jury may be a violation of a criminal defendant's equal protection rights, but it is not "plain error" that mandates reversal of a capital murder conviction in a case in which the defendant did not make a timely motion to quash the indictment. As we noted above, an error is not "plain error" unless a failure to reverse the defendant's conviction on the basis of that error would be a "miscarriage of justice." See United States v. Young, 470 U.S. at 15, 105 S.Ct. at 1046. Because the role of an Alabama grand jury foreperson is almost entirely ministerial, we conclude that discrimination in the selection of the foreperson of the otherwise properly constituted grand jury that indicted Pace did not deprive him of a fundamentally fair grand jury hearing or of a subsequent fair trial.
First, the discriminatory selection of the foreperson in this case did not impact the integrity of the indictment process through the composition of the grand jury panel. Unlike the Tennessee grand jury foreperson in Rose, the grand jury foreperson selected in this case was selected from among a panel of impartially chosen grand jurors. Thus, like the selection of federal grand jury forepersons in Hobby, the selection of the foreperson in this case did not change the composition of the grand jury venire. See 443 U.S. at 548, n. 2, 99 S.Ct. at 2996, n. 2. Thus, Pace could not have suffered any prejudice arising from the foreperson's membership in the grand jury panel, which was admittedly chosen from a fair cross-section of the community.
Second, the discriminatory selection of the foreperson in this case did not substantially impact the integrity of the indictment process through the involvement of the foreperson. Unlike the Tennessee grand jury foreperson in Rose, the grand jury foreperson selected in this case had only a clerical *338 involvement with the indictment process. In Rose, the Supreme Court noted that Tennessee grand jury forepersons, in addition to the ministerial functions of presiding over the grand jury, administering oaths to witnesses, and signing indictments and subpoenas, had a substantive duty to assist the district attorney in the investigation of crimes. 443 U.S. at 548, n. 2, 99 S.Ct. at 2996, n. 2. In contrast, Alabama grand jury forepersons have no duty to assist the district attorney in the investigation of crimes and are generally limited to merely reporting grand jury votes and signing the appropriate paperwork prepared by the court or the district attorney. Rule 12.5, Ala.R.Cr.P.
Third, the discriminatory selection of the foreperson in this case did not impact the integrity of the indictment process through the foreperson's influence over the grand jury panel. Unlike the dominant and authoritative role the Tennessee grand jury foreperson played in Rose, the role of the grand jury foreperson in this case was to perform merely ministerial tasks. The Tennessee grand jury foreperson in Rose had a virtual veto power over the indictment process because under Tennessee law the failure of the foreperson to sign an indictment renders the indictment "fatally defective." 443 U.S. at 548, n. 2, 99 S.Ct. at 2996, n. 2. In contrast, the role of a grand jury foreperson in Alabama is so ministerial that even his or her failure to participate in deliberations and to vote with the panel is not fatal to the indictment if the requisite 12 members of the panel concur in the indictment. Noah, supra. In sum, we conclude that any prejudice suffered by Pace because of the foreperson's involvement in the judicial process was not substantial and, thus, did not rise to the level of plain error.
Although the Court of Criminal Appeals erred in holding that Pace's indictment must be quashed and that he must be reindicted, that court's holding that Pace is entitled to a new trial based on reversible error that occurred in relation to other issues this Court has not reviewed is not affected by this certiorari review. Accordingly, we reverse the judgment of the Court of Criminal Appeals to the extent that it holds that discrimination in the selection of the foreperson of Pace's otherwise properly constituted grand jury is "plain error." We remand this cause to the Court of Criminal Appeals for an order or proceedings consistent with this opinion.
Although we hold that no plain error occurred in this case, we are nonetheless adamant in our view that racial discrimination of any kind is utterly repugnant to the judicial process and the basic concepts of equal treatment under the law enshrined in our federal and state Constitutions.[6] See Rose, 443 U.S. at 555-56, 99 S.Ct. at 2999-3000. If a defendant makes a timely and valid challenge to his or her indictment based on a violation of equal protection rights occurring as the result of discriminatory selection of the foreperson of the grand jury that returned the indictment, this Court will dismiss the indictment and require that if the State reindicts the accused it do so with a grand jury selected and acting free of any racial discrimination.
REVERSED IN PART AND REMANDED.[7]
MADDOX, SHORES, and HOUSTON, JJ., concur.
HOOPER, C.J., and ALMON and SEE, JJ., concur in the result.
COOK, J., dissents.
COOK, Justice (dissenting).
I respectfully dissent. The Alabama Court of Criminal Appeals correctly reversed Pace's capital murder conviction and death *339 sentence based upon the presence of racial discrimination in the selection of grand jury forepersons in Morgan County. The plurality concludes that although Pace's equal protection rights were violated, this discriminatory process had little if any affect on his due process right to fundamental fairness because "the function of [an Alabama] grand jury foreperson is almost entirely ministerial." 714 So.2d at 336. Therefore, the plurality concludes, the long history of racial discrimination in the selection of grand jury forepersons in Morgan County did not constitute "plain error." I strenuously disagree. A criminal defendant's equal protection rights cannot be violated by a discriminatory practice without also violating the defendant's due process right to fundamental fairness.
The Ala. Const. of 1901, Art. I, § 6, provides in pertinent part:
"That in all criminal prosecutions, the accused has a right to be heard by himself and counsel, or either; ... and, in all prosecutions by indictment, a speedy, public trial, by an impartial jury of the county or district in which the offense was committed; and he shall not be compelled to give evidence against himself, nor be deprived of life, liberty or property, except by due process of law;...."
(Emphasis added.)
Pace proved that Morgan County had engaged in a prolonged tradition of racial discrimination in selecting grand jury forepersons.
Under the plain error rule provided for in Rule 39(k), Ala.R.App. P., we will "notice any plain error or defect in the proceeding under review, whether or not [it was] brought to the attention of the trial court, and take appropriate appellate action ... whenever such error has or probably has adversely affected the substantial rights of the petitioner." See Ex parte McNair, 653 So.2d 353, 360 (Ala.1994), cert. denied, 513 U.S. 1159, 115 S.Ct. 1121,130 L.Ed.2d 1084 (1995).
The plurality relies on Hobby v. United States, 468 U.S. 339, 104 S.Ct. 3093, 82 L.Ed.2d 260 (1984), in holding that discrimination in the selection of a foreperson whose duties are ministerial, in an otherwise properly constituted grand jury, does not violate the Due Process Clause of the United States Constitution and is not "plain error." Although the Court in Hobby described the role of a federal grand jury foreperson, Hobby addressed a context of a due process challenge that was different from that of the constitutional challenge in this case. In Hobby, a white male challenged the under-representation of blacks and women as forepersons. The United States Supreme Court held that discrimination against blacks and women in the selection of a federal grand jury foreperson may violate the right to equal protection but did not violate a white male defendant's due process rights. However, in this case, the defendant, a black male, challenges the under-representation of other blacks as grand jury forepersons in Morgan County.
Additionally, this case is more analogous to Lee v. State, 631 So.2d 1059 (Ala.Crim.App. 1993), since, in Lee, a black defendant challenged the under-representation of blacks selected as grand jury forepersons in Monroe County. The Alabama Court of Criminal Appeals held that the criminal defendant's due process rights were violated by racial discrimination in the selection of the grand jury foreperson from a properly constituted Alabama grand jury. The plurality overrules the holding in Lee, stating that the function of an Alabama grand jury foreperson is similar to the ministerial function of a federal grand jury foreperson. However, the function of an Alabama grand jury foreperson is not merely ministerial, as that of a federal grand jury foreperson is. An Alabama grand jury foreperson has an immense impact on grand jurors, as grand jurors look to the foreperson as their leaderand rightly so. Pursuant to Rule 12.5, Ala.R.Cr.P., the influence a grand jury foreperson possesses is evident by the required duties to "preside over the grand jury proceedings and act as the court's representative by maintaining order, administering oaths, excluding unauthorized persons and persons acting in an unauthorized manner, appointing such officers within the grand jury as are necessary for its orderly functioning," and initiating contempt proceedings. Therefore, the authority of an *340 Alabama grand jury foreperson extends far beyond the strictly clerical duties that a federal grand jury foreperson performs. Therefore, I maintain that Hobby is inapplicable to this case.
In Johnson v. Puckett, the Fifth Circuit Court of Appeals held that a black male defendant's equal protection and due process rights were violated by the discriminatory selection of grand jury forepersons in Panola County, Mississippi. The court reasoned:
"The injury to equal protection caused by racial discrimination in the selection of members of a grand jury `is not limited to the defendantthere is injury to the jury system, to the law as an institution, to the community at large, and to the processes of our courts.' This injury to society as a whole, as well as the stigmatization and prejudice directed against a distinct group, exists regardless of the extent of the grand jury foreman's authority or of the composition of the grand jury as a fair cross-section of the community, or their effect on the fundamental fairness of the judicial process. The due process analysis contained in Hobby [v. United States, 468 U.S. 339, 104 S.Ct. 3093, 82 L.Ed.2d 260 (1984),] is simply inapplicable to a claim of violation of equal protection through the discriminatory selection process of a grand jury foreman."
Johnson v. Puckett, 929 F.2d 1067 at 1071 (5th Cir.1991), cert. denied, 502 U.S. 898, 112 S.Ct. 274, 116 L.Ed.2d 226 (1991). (Emphasis added.)
The ministerial duties of a federal grand jury foreperson are insignificant but an Alabama grand jury foreperson possesses significant authority. A grand jury composed of a cross-section of the community will not cure the stigma left by the discriminatory selection of the grand jury foreperson. That discrimination not only casts doubt on our whole judicial system, it perpetuates stereotypes and prejudices, thereby adversely affecting a person's basic right to fundamental fairness.
Given the authority of an Alabama grand jury foreperson, I maintain that if a racially discriminatory practice occurs in the selection of a grand jury foreperson, this discriminatory selection constitutes "plain error." Not only has a miscarriage of justice occurred, but a criminal defendant's due process right to fundamental fairness has been violated.
Because I would hold that the discrimination in the selection of the grand jury foreperson substantially violated Pace's equal protection rights, as well as his due process rights, I would also hold that the Court of Criminal Appeals properly reversed Pace's conviction and quashed his indictment in order to cure these constitutional violations.
NOTES
[1] Levi Pace was convicted of murder made capital because the murder was committed during the course of a robbery. See Ala. Code 1975, § 13A-5-40(a)(2).
[2] Although the Court of Criminal Appeals' opinion did not specifically state which constitutional provision was violated by the manner in which Morgan County selects grand jury forepersons, we assume that the Equal Protection and Due Process Clauses were implicated.
[3] But see State v. Campbell, 661 So.2d 1321 (La.1995) (holding that a white defendant did not have standing to raise the equal protection claims of black persons discriminated against in the selection of grand jury forepersons).
[4] The first sentence of the Johnson opinion of the Court of Appeals for the Fifth Circuit states:

"A black state prisoner, indicted for murder in 1979 and thereafter convicted, contends that he was denied equal protection of the law because for a twenty year period up to and including his indictment, 42 grand jury foremen, all of them white, had been appointed by the circuit judges of the county in which he was indicted, although the population of the county was 43% black."
929 F.2d at 1068 (emphasis added). The court noted that Johnson's habeas corpus petition had not cited a specific constitutional provision as the basis for the relief he requested; however, the court understood Johnson to have alleged a violation of his right to equal protection under the Fourteenth Amendment. Id. at 1070. In fact, the court noted that a due process analysis was not applicable. Id. at 1071.
[5] This statement in Myers is not to be taken as meaning that this Court will not or cannot recognize as "plain error" violations of constitutional provisions other than the Due Process Clause.
[6] We note that since Pace was indicted, Morgan County has changed its method of selecting forepersons from among the members of the grand jury. Instead of the judge and the district attorney selecting the foreperson, the members of the grand jury select a foreperson from among themselves. This new procedure should limit any appearance of discrimination in the judicial process.
[7] We have not reviewed that portion of the Court of Criminal Appeals' judgment reversing Pace's conviction and ordering a new trial. Therefore, that reversal and new trial order are not affected by our order reversing in part.